779 A.2d 1128 (2001)
STATE of New Jersey, Plaintiff-Respondent,
v.
Charita McLEAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 2001.
Decided October 2, 2001.
Peter A. Garcia, Acting Public Defender, attorney for appellant (Marcia Blum, Assistant *1129 Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Lora B. Glick, Deputy Attorney General, of counsel and on the brief).
Before Judges CONLEY, A.A. RODRÍGUEZ and LISA.
The opinion of the court was delivered by LISA, J.A.D.
In a five count indictment, Charita McLean, was charged with second-degree aggravated assault against Dionne Jarmon and Shemika Tillman by causing or attempting to cause serious bodily injury, contrary to N.J.S.A. 2C:12-1b(1) (count one); third-degree aggravated assault against Jarmon and Tillman by causing or attempting to cause significant bodily injury, contrary to N.J.S.A. 2C:12-1b(7) (count four); third-degree aggravated assault against Jarmon and Tillman by causing or attempting to cause bodily injury with a deadly weapon, contrary to N.J.S.A. 2C:12-1b(2) (count five); third-degree possession of a weapon, namely a razor/box cutter, with a purpose to use it unlawfully against the person of Jarmon and Tillman, contrary to N.J.S.A. 2C:39-4d (count two); and second-degree armed burglary, contrary to N.J.S.A. 2C:18-2 (count three).
After a trial, a jury convicted defendant of count one (aggravated assault by causing or attempting to cause serious bodily injury) as to Tillman only; count five (aggravated assault by causing or attempting to cause bodily injury with a deadly weapon) as to both Jarmon and Tillman; and count two (possession of a weapon for an unlawful purpose) as to Tillman only. Defendant was acquitted of all other charges. She was sentenced on count one to a term appropriate to a crime one degree lower, N.J.S.A. 2C:44-1f(2), namely to four years imprisonment, subject to a period of parole ineligibility of eighty-five percent, or three years, four months and twenty-six days, and three years parole supervision pursuant to N.J.S.A. 2C:43-7.2, the No Early Release Act (NERA); on count two to a concurrent four year term of imprisonment; and on count five to a concurrent four year term of imprisonment. Restitution and appropriate mandatory monetary penalties were imposed.
On appeal, defendant makes these contentions:
POINT I
DEFENDANT IS ENTITLED TO JUDGMENT OF ACQUITTAL ON COUNTS I AND II BECAUSE SHE WAS NOT CONVICTED OF THE OFFENSES CHARGED IN THOSE COUNTS. (Not Raised Below)
POINT II
THE COURT'S BRIEF ALLUSION TO THE DEFENSE OF ACCIDENTTHAT IT "DID NOT WANT TO PRECLUDE [THE JURY] FROM CONSIDERING WHETHER [THE OFFENSE] WAS THE RESULT OF SOME ACCIDENT"DID NOT CONSTITUTE AN INSTRUCTION ON THE DEFENSE OF ACCIDENT. (Partly Raised Below)
POINT III
IT WAS REVERSIBLE ERROR NOT TO CHARGE ON IMPERFECT SELF-DEFENSE. (Not Raised Below)
POINT IV
IT WAS REVERSIBLE ERROR NOT TO CHARGE MUTUAL-CONSENT ASSAULT UNDER N.J.S.A. 2C:12-1a(1).
POINT V

N.J.S.A. 2C:43-7.2, THE NO EARLY RELEASE ACT, IS UNCONSTITUTIONAL BECAUSE IT VIOLATES *1130 THE CONSTITUTIONAL GUARANTEES OF DUE PROCESS OF LAW, TRIAL BY JURY, AND RIGHT TO INDICTMENT. (Not Raised Below)
POINT VI
DEFENDANT IS NOT ELIGIBLE FOR A NERA TERM. (Not Raised Below)
POINT VII
THE SENTENCE OF FOUR YEARS, WITH AN 85% PAROLE BAR, IS EXCESSIVE; THE COURT SHOULD HAVE GRANTED DEFENDANT'S REQUEST FOR PROBATION.
POINT VIII
THE CONVICTION FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE UNDER 2C:39-4d MUST MERGE WITH THE CONVICTION FOR ASSAULT WITH A DEADLY WEAPON UNDER 2C:12-1b(2), AND THE 2C:12-1b(2) ASSAULT MUST MERGE WITH THE GREATER OFFENSE OF ASSAULT UNDER 2C:12-1b(1). (Partly Raised Below)
We agree with Point III only insofar as it pertains to the conviction for possession of a weapon for an unlawful purpose. We reject defendant's remaining contentions. Accordingly we reverse the conviction on count two and affirm the convictions and sentences on the remaining counts.
All of the charges arose out of a single incident that occurred on August 24, 1998 at a group home for the mentally challenged in Vineland, where Jarmon and Tillman were employed. Prior to that time, defendant had a romantic relationship with Jarmon's brother, Lorenzo Coursey, with whom she lived and had a twenty-month-old daughter. On August 23, 1998, defendant determined to end her relationship with Coursey and threw him out of their residence, throwing his belongings into the yard. Jarmon happened by and observed the dispute between defendant and her brother. She and defendant exchanged words and nearly became engaged in a physical altercation, but Coursey intervened.
On August 24, 1998, as defendant drove up to her residence, she saw a car exiting her driveway. It appeared to be the same car driven by Jarmon the previous day. Defendant drove to the group home to confront Jarmon about this and to tell her to stay away from her. Jarmon went out to defendant's vehicle, and a confrontation between defendant and Jarmon began. From this point, defendant's version differs significantly from that of Jarmon and Tillman.
According to Jarmon and Tillman, Jarmon spoke to defendant while defendant was in her car and observed a razor-like object in defendant's hand. Jarmon told defendant to leave, and as Jarmon returned to the home, defendant exited her car and followed Jarmon in and cut her with the razor. Tillman came to Jarmon's aid and began hitting defendant with a mop handle. Defendant pinned Tillman against the stove and cut her face with the razor. Jarmon hit defendant in the back with a trash can to get her off Tillman. When they finally got free of defendant, Tillman called 911 and defendant left.
Defendant stated she went to the group home to warn Jarmon to stay away from her, and Jarmon initiated the physical altercation outside. Although her trial testimony conflicted somewhat with her statement to the police two hours after the incident, the gist of defendant's version is that the physical altercation continued inside the home, with Jarmon hitting her with the mop handle, and then all three women struggling over the mop handle. During this struggle she heard Jarmon exclaim that she was going to cut defendant. Defendant then reached for Jarmon's free hand (the other one was pulling *1131 defendant's hair) and wrested a metal object from it. She flailed that object about until the other women released her. She then dropped the object and left the premises.
No weapon was recovered. Defendant suffered a cut to her thumb and a cut to one arm. She received no medical treatment. The injuries to Jarmon and Tillman were multiple and of some magnitude. Their facial lacerations were sutured by Dr. Watts, a plastic surgeon, over a combined span of four hours, utilizing a combined 300 to 400 sutures. Dr. Watts described Tillman's facial injuries: "[T]here were 40 centimeters of complex lacerations to the right eyebrow, right scalp, right cheek and right neck region." In Jarmon's case he described "a 10 centimeter complex laceration in the area of the right cheek," and "a 20 centimeter complex laceration on the right upper arm, and also the volar aspect of the lower arm." Dr. Watts described the depth of the lacerations suffered by both women, and the exposure of nerves, ducts and other internal structures, which made their repair complicated and difficult. These were not surface cuts. Dr. Watts opined that the resulting scars are permanent. Tillman described and displayed her scars to the jury:
I have a scar down the side of my right cheek. I have a scar down the side of my right eye. I have one across the right side of my head-my scalp. I have one on the right [side] of my neck. I have one on my left lower arm and a couple under my right underarm.
Similarly, Jarmon described and displayed "a scar on my right side of my cheek, and I have a scar on my right arm, and another scar on my left."

I
Defendant asserted self-defense at trial. On appeal, for the first time, defendant argues the trial judge erred by not giving an "imperfect self-defense" charge. Since this issue was not raised below, we must determine not only whether omission of such a charge was error, but whether it was plain error. R. 1:7-2. To warrant reversal under this standard, defendant must demonstrate that the omission of this charge possessed a clear capacity to produce an unjust result. State v. Melvin, 65 N.J. 1, 18, 319 A.2d 450 (1974); R. 2:10-2. The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
In a decision rendered after the trial of this case, our Supreme Court has addressed this issue in a context similar to the circumstances of this case. State v. Williams, 168 N.J. 323, 774 A.2d 457 (2001). There, Williams, an off-duty police officer, was convicted of second-degree possession of a firearm for an unlawful purpose (N.J.S.A. 2C:39-4a) and fourth-degree aggravated assault by pointing a firearm at another person under circumstances manifesting extreme indifference to human life (N.J.S.A. 2C:12-1b(4)). Williams drew and fired his service revolver at a vehicle being operated by the victim. He claimed he did so in defense of another, his wife. He contended the two vehicles had been in a collision, the other driver left the scene, and his vehicle (operated by his wife) pursued, caught and blocked the other vehicle. Then, according to Williams, while his wife was outside their vehicle, the other driver drove towards her at a high rate of speed. Id. at 330-31, 774 A.2d 457. Williams explained "In my mind, my wife's life was in danger." Id. at 331, 774 A.2d 457. The other driver denied there was any prior collision and described Williams's action as an unprovoked attack. Ibid.
*1132 By virtue of a dissent in this court's opinion on the adequacy of the jury instruction regarding the possession of a weapon for an unlawful purpose charge, the Court considered only that issue. Id. at 330, 774 A.2d 457. The Court recognized the elements of that offense: (1) the item was a firearm; (2) defendant possessed it; (3) defendant's purpose was to use it against the person or property of another; and (4) the defendant intended to use it in a manner that was proscribed by law. Id. at 333, 774 A.2d 457. Analyzing the "pivotal" fourth element, the Court noted "the focus [of N.J.S.A. 2C:39-4a] is on the subjective attitude of the accused." Ibid. The Court thus reasoned that where "state of mind is an essential or material element of the offense, a defendant may not be deprived of the opportunity to assert a mistaken belief that could negate the mental state required to convict." Ibid. The Court concluded:
Although an honest but unreasonable belief in the need to use force for protective purposes would not serve to exonerate Williams from the substantive charges of attempted murder and aggravated assault because of the Code's interdiction against "imperfect self-defense," the use of such evidence for a different purpose altogether, that is, to controvert the State's proof of the intent element of N.J.S.A. 2C:39-4a is entirely proper and indeed unremarkable.

[Id. at 335, 774 A.2d 457.]
The Williams trial court elaborated on the fourth element of N.J.S.A. 2C:39-4a, explaining to the jury that the alleged unlawful purpose was to use the firearm against the other driver for the purposes charged in the indictment. The judge further instructed that any lawful purpose, including a belief by Williams that his purpose was to lawfully use the firearm to protect himself or another from unlawful force, was a defense. Id. at 336, 774 A.2d 457. Later in the charge, after instructing on substantive offenses, the judge gave a standard self-defense charge, repeatedly stating that the defense of self-defense could excuse his conduct only if Williams reasonably believed the use of deadly force was necessary to defend against the conduct of another. Id. at 337, 774 A.2d 457.
During deliberations, the jurors requested a read-back of the four elements of N.J.S.A. 2C:39-4a and of self-defense. Without objection, the judge re-read the self-defense and N.J.S.A. 2C:39-4a charges. Id. at 337-38, 774 A.2d 457. Applying the plain error standard, the Court concluded:
It is not only possible, but likely, because of the juxtaposition of the jury instruction and reinstruction, that the jury improperly imported the reasonableness requirement from the justification defense to the determination of whether Williams had the requisite state of mind to be convicted under N.J.S.A. 2C:39-4a. In other words, on this record, it is impossible to know whether the jury convicted Williams [of violating N.J.S.A. 2C:39-4a] because it concluded that he was not acting in defense of his wife at all, or because it concluded that he was unreasonable in believing that there was a need to use force on her behalf.
The court was required to explain to the jury that in order to negate the unlawful purpose element of the possession offense, William's belief in his need to fire the gun did not need to be reasonable, as is required to establish a justification defense to the substantive charges. To be sure, the court correctly instructed the jury regarding the justification defense. However, it was the entirely proper emphasis on the reasonableness in that charge that contributed to the prejudice resulting from insufficient *1133 instruction on the possession charge.

[Id. at 338-39, 774 A.2d 457.]
We face a similar situation here. The trial judge instructed the jury on the four elements of N.J.S.A. 2C:39-4a. Regarding the pivotal fourth element, he stated:
A mental element of purpose to use a weapon unlawfully requires that you find the defendant possessed the weapon with a conscious subjective design, or specific intent, to use it against a person or property of another, in that unlawful manner, as charged in the indictment and not for some other purpose.
In this case, the defendant's unlawful purpose in possessing the weapon, the State contends that the defendant's unlawful purpose in possession the weapon was to cut one or both of the victims. The defense, on the other hand, contends that she acted in self-defense. You must not consider your own notions of the unlawfulness of the defendant's purpose, but must consider whether the State has proven the specific unlawful purpose which is charged, namely the cutting or the assault with the weapon upon one or both of these ladies who are mentioned as victims.
The judge then went directly into a lengthy self-defense charge, prefacing it by stating that self-defense "comes into play with reference to the aggravated assault charges and with reference to the weapons charge." (emphasis added). This prefatory comment misstated the law, since the affirmative defense of justification is not relevant under N.J.S.A. 2C:39-4a. State v. Harmon, 104 N.J. 189, 207, 516 A.2d 1047 (1986). Thus, in addition to the juxtaposition of the immediately-following self-defense charge having the effect of connecting self-defense principles to the possession charge, the prefatory comment expressly connected them. The self-defense charge repeatedly instructed that defendant's conduct could be excused only upon a reasonable belief that her conduct was necessary to defend herself.
Following the Williams rationale, we are persuaded it was not only possible, but likely, that the jury improperly imported the reasonableness requirement from the justification defense to the determination of whether defendant had the requisite state of mind to be convicted of the possession offense. By failing to distinguish that a reasonable belief in the need to defend herself is required to justify defendant's conduct on the substantive offenses, but that only an honest, though unreasonable, belief is sufficient to negate the required purposeful mental state in the possession offense, "the judge left the jury to speculate about the applicable law." Williams, supra, 168 N.J. at 339, 774 A.2d 457.
We therefore conclude that the charge had the clear capacity to mislead the jury with respect to the possession charge, and we reverse defendant's conviction on count two. The reversal of count two on this basis in no way implicates the viability of the convictions on the substantive counts. The Williams majority stated:
We agree entirely with the dissenters that if the jury found that Williams's belief in the need to use force in defense of his wife was honest but unreasonable, that belief could not serve to exonerate him of attempted murder and aggravated assault because we do not recognize "imperfect self-defense" in this State. State v. Branch, 155 N.J. 317, 329, 714 A.2d 918 (1998).

[168 N.J. at 334, 774 A.2d 457.]
The dissent acknowledged that "[t]he jury rejected defendant's justification defense as to the fourth-degree aggravated assault charge. The Appellate Division and the majority have affirmed that conviction." *1134 Id. at 345, 774 A.2d 457, Coleman, J., dissenting.

II
Defendant challenges the application of NERA to her conviction on count one of second-degree aggravated assault for causing or attempting to cause serious bodily injury (N.J.S.A. 2C:12-1b(1)). In her initial brief, defendant argued that NERA violates the United States and New Jersey constitutions. However, in a supplemental submission following our Supreme Court's decision in State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001), which upheld NERA's constitutionality, she has withdrawn that argument.
Defendant continues to argue, however, that on this record NERA should not apply to her because the jury did not find the existence of a NERA predicate beyond a reasonable doubt. We disagree.
At the time of defendant's offense,[1] NERA applied to first and second degree "violent crimes," defined as those "in which the actor causes ... serious bodily injury ... or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:43-7.2d. The State argues that both predicates are established by the jury verdict. In Johnson, supra, the Court held that a jury must determine beyond a reasonable doubt the existence of a NERA predicate to avoid constitutional infirmity, 166 N.J. at 544, 766 A.2d 1126, as found by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Whether the "caused serious bodily injury" predicate was found by the jury beyond a reasonable doubt is open to question since count one charged defendant alternatively with causing or attempting to cause serious bodily injury, contrary to N.J.S.A. 2C:12-1b(1). The jury instruction and verdict sheet continued the alternative theories. No special verdict was utilized. Therefore, it is possible the jury did not find Tillman actually sustained serious bodily injury, but that defendant attempted to cause such injury. Such a finding would not satisfy NERA.[2]State v. Staten, 327 N.J.Super. 349, 354, 743 A.2d 365 (App.Div.2000).
However, the jury found defendant guilty of count five, aggravated assault by causing or attempting to cause bodily injury to Tillman with a deadly weapon, contrary to N.J.S.A. 2C:12-1b(2). An element of this offense is the use of a deadly weapon. "Deadly weapon" is defined in NERA as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." N.J.S.A. 2C:43-7.2d. The definition of "deadly weapon" which is seemingly applicable to N.J.S.A. 2C:12-1b(2) is that in N.J.S.A. 2C:11-1c, which is broader than that in NERA since it includes, in addition to the NERA definition, an object "which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." However, it is recognized that the structure of N.J.S.A. 2C:12-1b(2) requires that the *1135 weapon be real and not merely an object fashioned to look like a weapon. Cannel, New Jersey Criminal Code Annotated, comment 8 on N.J.S.A. 2C:12-1b(2) and (3) (2000). The approved model jury charge accordingly does not include the above-quoted additional provision of N.J.S.A. 2C:11-1c. Model Jury Charges (Criminal), "Aggravated AssaultBodily Injury With Deadly Weapon" (10/17/88). The trial judge followed the model charge and gave the narrower definition of "deadly weapon," which is exactly as set forth in NERA. Considering that the charges in counts one and five arose out of the same incident, the nature of Tillman's injuries and the conviction on count five, we have no hesitancy in concluding that the jury did find the "deadly weapon" predicate beyond a reasonable doubt with respect to count one. Therefore, the NERA sentence on count one was properly imposed and does not run afoul of the Apprendi holding.

III
Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add the following comments regarding merger. Defendant argues that count two (possession of a weapon for an unlawful purpose) should merge with count one (serious bodily injury aggravated assault). The State concedes this point, and we agree, since the only asserted unlawful purpose in possessing the weapon was to commit the assault. State v. Diaz, 144 N.J. 628, 641, 677 A.2d 1120 (1996). Although we have reversed the conviction on count two, we offer this comment for the guidance of the parties in evaluating the advisability of retrying that count. We decline to disturb the non-merger of count five (deadly weapon aggravated assault) with count one (serious bodily injury aggravated assault) because the jury's verdict on count five encompassed both victims whereas its verdict on count one encompassed only one.
Affirmed in part; reversed in part.
NOTES
[1] Effective June 29, 2001, NERA was amended to list the specific offenses to which it applies, rather than making applicability dependent on a definition of "violent crime." L.2001, c. 129. In the new formulation, all violations of N.J.S.A. 2C:12-1b(1) are subject to NERA. Ibid.
[2] We refrain from deciding whether the "caused serious bodily injury" predicate has been established in this case because it is not necessary to our disposition. We do not imply that this predicate cannot be established where the alternative forms of N.J.S.A. 2C:12-1b(1) are presented to the jury without a special verdict.