792 A.2d 565 (2002)
348 N.J. Super. 625
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael J. NATALE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2002.
Decided March 11, 2002.
*566 Edward J. Crisonino, Cherry Hill, argued the cause for appellant.
Robin A. Hamett argued the cause for respondent (Lee A. Solomon, Camden County Prosecutor, attorney; Ms. Hamett, Assistant Prosecutor, of counsel and on the brief).
Before Judges CONLEY, A.A. RODRIGUEZ and LEFELT.
The opinion of the court was delivered by CONLEY, P.J.A.D.
Defendant's criminal convictions and sentences, including a NERA[1] sentence enhancement, arose from a battering of his live-in girlfriend that occurred over a number of hours and involved different forms of assaultive conduct and different forms of weapons. In addition to attempted murder, the indictment included third-degree aggravated assault under N.J.S.A. 2C:12-1b(2) (attempting to cause bodily injury with a deadly weapon) and third and fourth-degree weapons offenses. There were several deadly weapons charged in the indictment and charged to the petit jury. They were "speakers and/or candle holder and/or opera glasses and/or statue and/or door." The jury instructions charged as lesser included offenses of the attempted murder count, second-degree aggravated assault under N.J.S.A. 2C:12-1b(1) (purposefully, knowingly or recklessly causing serious bodily injury or attempting to do so) and third-degree aggravated assault under N.J.S.A. 2C:12-1b(7) (purposefully, knowingly or recklessly causing significant bodily injury or attempting to do so). As to these included offenses, the jury verdict form did not contain separate interrogatories for their alternative causing or attempting elements. Thus, when the jury acquitted defendant of attempted murder but convicted him of the 2C:12-1b(1) second-degree aggravated assault, the verdict on that does not reflect whether the jury found that he caused serious bodily harm or only attempted to do so. Similarly, the verdict did not include separate interrogatories with respect to the weapons charges as to which weapon or weapons were used. Thus, while the jury convicted defendant of third-degree aggravated assault under N.J.S.A. 2C:12-1b(2) (causing or attempting to cause bodily injury with a deadly weapon), the verdict does not reflect which of the implements included in the charge (speakers, candle holder, opera glasses, statue, door) defendant used to inflict the bodily injury element of that offense.
The convictions included not only the second and third-degree aggravated assaults, but fourth-degree unlawful possession *567 of a weapon, N.J.S.A. 2C:39-5d; third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4d; third-degree terroristic threats, N.J.S.A. 2C:12-3a, b; and third-degree criminal restraint, N.J.S.A. 2C:13-2a, b. Concurrent five year terms on the latter two convictions were imposed consecutive to a nine-year term with an eighty-five percent disqualifier on the second-degree aggravated assault into which the third-degree assault and weapons convictions were merged.
On appeal, defendant contends:
POINT I THE NO EARLY RELEASE ACT SHOULD NOT HAVE BEEN APPLIED TO DEFENDANT'S SENTENCE UNDER COUNT ONE.
POINT II THE COURT SHOULD HAVE INSTRUCTED THE JURY ON THE LESSER INCLUDED CHARGE OF SIMPLE ASSAULT.
POINT III THE COURT SHOULD NOT HAVE CHARGED SECOND DEGREE AGGRAVATED ASSAULT OVER DEFENDANT'S OBJECTION.
POINT IV THE TRIAL COURT IMPROPERLY ALLOWED VIOLATIONS OF ITS SEQUESTRATION ORDER.
POINT V THE SENTENCE IMPOSED ON COUNT ONE WAS EXCESSIVE.
POINT VI THE VICTIM, AND THE PROSECUTOR SHOULD NOT HAVE BEEN ALLOWED TO ARGUE THE VICTIM SUFFERED PERMANENT INJURIES.
We have considered these contentions in light of the record and applicable law. We are convinced that all but the NERA sentence enhancement issue are without merit and require no further opinion. R. 2:11-3e(2).
As we have said, the jury verdict did not identify whether the second-degree assault was premised upon an actual infliction of serious bodily injury or only an attempt to so inflict. Neither was the use or threatened use of a deadly weapon a predicate of that conviction. A NERA sentence enhancement, therefore, was problematic. State v. Staten, 327 N.J.Super. 349, 354, 743 A.2d 365 (App.Div.), certif. denied, 164 N.J. 561, 753 A.2d 1153 (2000) ("[A]n attempt to cause death or serious bodily injury, without causing either, and without the use or threatened use of a deadly weapon, does not meet [NERA's] statutory definition of violent crime....").[2]See also State v. Thomas, 166 N.J. 560, 573-74, 767 A.2d 459 (2001) (where the elements of the crime the jury returned a verdict on do not facially contain proof of a NERA predicate, there must be proof of an independent act suppling that predicate); State v. Parolin, 339 N.J.Super. 10, 20-21, 770 A.2d 1204 (App.Div.), certif. granted, 169 N.J. 609, 782 A.2d 426 (2001) (NERA sentence enhancement did not apply to conviction of second-degree possession of a handgun for an unlawful purpose where the factual scenario established that the unlawful purpose could only have been to commit a third-degree or fourth-degree offense).
Putting aside the guilty plea setting, see generally, State v. Shoats, 339 N.J.Super. *568 359, 370, 772 A.2d 1 (App.Div.2001), where there is a conviction by a jury, the NERA sentence enhancement element applicable to a particular first or second-degree conviction must be found by the jury beyond a reasonable doubt. State v. Johnson, 166 N.J. 523, 544, 766 A.2d 1126 (2001). The clearest case, of course, would be where the jury expressly finds such element as part of its finding of guilt on a first or second-degree offense. But even when the elements of the crime the jury has returned a verdict on do not "overlap completely" with the applicable NERA predicate, that factual predicate can otherwise be determined to have formed a basis for the conviction. Id. at 545-46, 766 A.2d 1126.
Here, in imposing a NERA sentence enhancement, the trial judge looked to the jury's guilty verdict on the third-degree aggravated assault, realizing that the second-degree aggravated assault would not suffice. During the sentencing proceeding, the judge said:

The jury found in finding the defendant guilty of aggravated assault with a deadly weapon that the defendant did, in fact, have a deadly weapon and used those to inflict injury. And, therefore, that finding that he possessed a deadly weapon persuades this Court that the aggravated assault under Count 1 was the result of the use of a deadly weapon. And there was testimony before the jury that the defendant attacked the victim with a number of items ... [that] would have met the definition of a deadly weapon and, accordingly, I find that for sentencing purposes [Defendant] clearly comes within purview of the No Early Release Act.

[Emphasis added.]
Additionally, the judge's written "Statement of Reasons and Sentence" states in part:

[I]t is beyond dispute that the jury did find that the defendant used a deadly weapon. This is so because the jury found the defendant guilty under [the third-degree] Aggravated Assault with a Deadly Weapon. The definition of a deadly weapon under 2C:12-1b(2) is identical to the definition of a deadly weapon under the No Early Release Act. Although the 3° conviction under Count 2 cannot come within the purview of the No Early Release Act because it is only a 3° conviction, the jury's finding in Count 2 that the defendant utilized a deadly weapon therefore subjects him to sentencing under the No Early Release Act for Count 1 even though using a deadly weapon is not a required element of serious bodily injury type of Aggravated Assault. Accordingly, the Court finds that the No Early Release Act applies to the sentencing under Count 1 for 2° Aggravated Assault, because the defendant used a deadly weapon.

[Emphasis added.]
At the outset, we acknowledge that the jury instructions on what constitutes a deadly weapon in the context of the third-degree aggravated assault did dovetail with that of NERA's deadly weapon definition. We need not, therefore, involve ourselves in the differences between the NERA deadly weapon definition and others. See generally State v. Jules, 345 N.J.Super. 185, 189-90, 784 A.2d 722 (App. Div.2001), certif. denied, 171 N.J. 337, 793 A.2d 715 (2002); State v. Austin, 335 N.J.Super. 486, 490-91, 762 A.2d 1052 (App.Div.2000), certif. denied, 168 N.J. 294, 773 A.2d 1157 (2001). On the other hand, we cannot say that, although the jury verdict does not expressly include a finding that defendant caused serious bodily injury, we are satisfied the jury did, in *569 fact, so conclude.[3]Compare State v. Johnson, supra, 166 N.J. at 545-46, 766 A.2d 1126.
Johnson involved a first-degree robbery conviction. At the time of the robbery, defendant possessed a BB gun. That was the robbery's first-degree predicate. First-degree robbery, where possession of a firearm is the predicate, can be established by a jury finding that the defendant "is armed with, or uses or threatens the immediate use...." of a deadly weapon. N.J.S.A. 2C:15-1b. But unlike the first-degree robbery predicate, which can be established by mere possession of a deadly weapon during the course of the robbery, the NERA deadly weapon predicate requires a jury finding of use or threatened use. Merely possessing a deadly weapon during the course of a first or second-degree offense does not suffice. State v. Shoats, supra, 339 N.J.Super. at 364-67, 772 A.2d 1; State v. Grawe, 327 N.J.Super. 579, 593-95, 744 A.2d 246 (App. Div.), certif. denied, 164 N.J. 560, 753 A.2d 1152 (2000).[4]
In State v. Johnson, supra, 166 N.J. 523, 766 A.2d 1126, while the jury verdict did not reflect whether the armed aspect of the first-degree robbery was premised upon actual or threatened use, as opposed to mere possession, of a deadly weapon, the Court was confidently able to say:
The only witness to the August 8 robbery who testified at trial was the victim, and she testified on both direct and cross examination that Johnson aimed the BB gun at her. That testimony was uncontradicted by any other evidence at trial. Thus, in view of the evidence adduced at trial, the only conceivable conclusion that Johnson's jury could have reached in finding Johnson guilty of first-degree robbery was that Johnson threatened the victim with the BB gun in the process of robbing her. Accordingly, notwithstanding the fact that the trial court failed to specifically instruct the jury to find the NERA violent crime predicate, we affirm Johnson's sentence because the facts adduced at trial establish that the jury made that finding beyond a reasonable doubt.

[Id. at 546, 766 A.2d 1126.]
Here, our focus must be upon the conviction of the second-degree aggravated *570 assault, as a NERA sentence enhancement can apply only to a first or second-degree crime. State v. Parolin, supra, 339 N.J.Super. at 20-21, 770 A.2d 1204. Since the jury verdict does not reflect a finding that defendant caused serious bodily injury and such a finding is not otherwise clear beyond a reasonable doubt from the evidence, we cannot look to a State v. Johnson rationale.
It was the other NERA predicateuse or threatened use of a deadly weaponthat was the rationale used by the trial judge to impose a NERA sentence enhancement upon the second-degree aggravated assault. And the jury, indeed, did find that defendant used a deadly weapon upon the victim at some point during the assault. But it did so in the context of a third-degree, non-NERA, crime, and in the context of bodily injury harm only.
That is not necessarily fatal. State v. McLean, 344 N.J.Super. 61, 779 A.2d 1128 (App.Div.2001). In McLean, as here, defendant was convicted of second-degree aggravated assault (the NERA predicate offense), but the verdict did not identify whether the jury found serious bodily injury or an attempt to cause serious bodily injury. And, as here, "[w]hether the `caused serious bodily injury' predicate was found by the jury beyond a reasonable doubt is open to question...." Id. at 72, 779 A.2d 1128. But, as here, the jury convicted defendant, also, of third-degree aggravated assault with a deadly weapon pursuant to N.J.S.A. 2C:12-1b(2). Both the second-degree aggravated assault and the third-degree aggravated assault arose out of a knife slashing. A knife, clearly, is a NERA deadly weapon, and the act of slashing is, just as clearly, a use thereof. Thus, we said:
Considering that the [second-degree N.J.S.A. 2C:12-1b(1) aggravated assault] and [the third-degree N.J.S.A. 2C:12-1b(2) assault] arose out of the same incident, the nature of [the victim's] injuries and the conviction on [the third-degree assault with a deadly weapon], we have no hesitancy in concluding that the jury did find the "deadly weapon" predicate [of NERA] beyond a reasonable doubt with respect to [the NERA predicate offense, second-degree aggravated assault].

[Id. at 73, 779 A.2d 1128.]
Can the jury verdict here on the third-degree aggravated assault supply the missing factual predicate to the second-degree aggravated assault conviction as did the jury verdict in McLean? Certainly the verdict was premised upon a finding beyond a reasonable doubt that defendant used or threatened the use of a deadly weapon when inflicting bodily injury. But NERA requires that the nexus be between use of a deadly weapon and the predicate first or second-degree offense. State v. Parolin, supra, 339 N.J.Super. at 20-21, 770 A.2d 1204. Here, that translates to a required conclusion that the jury must have found use or threatened use of the deadly weapon in causing serious bodily injury or attempting such injury. We have already concluded we cannot view the second-degree assault verdict as premised upon a finding of actual serious bodily injury. Can we say the jury must have found defendant attempted to cause serious bodily injury with the use or threatened use of a deadly weapon[5] by virtue of *571 its third-degree aggravated assault verdict?
We could say that in McLean as the second and third-degree aggravated assaults arose out of a single episode and involved a single deadly weapon. Perhaps the difficulty we have in so concluding is best understood in the context of the evidence.
That evidence consisted entirely of the direct and cross-examination of the State's witnesses and the physical evidence introduced by the State. It showed the following. On January 10, 1999, the victim and defendant were in defendant's apartment. There was some history of prior abuse. The victim had made dinner. A telephone call from the victim's son, residing with the victim's estranged husband, angered defendant. The victim told defendant she was going to leave him for good. A course of abuse by defendant over an extended period of time then occurred. The abuse included the use of defendant's hands in pulling the victim's hair and smashing and slapping her face. According to the victim, defendant also smashed her head into stereo speakers, opera glasses, a candle holder, a statue and a door. A neighbor heard the commotion and attempted to intervene, ultimately calling the police. He testified that he saw defendant pull the victim by the hair, drag her across the ground and smash her head into a pole. He did not observe the use of any of the deadly weapons implicated in the third-degree aggravated assault conviction.
Despite the victim's testimony that she was assaulted with such items as stereo speakers, a candle holder, opera glasses, a statue and was smashed into a door, the medical evidence showed less severe injuries than what might have been expected. Cf. State v. Kane, 335 N.J.Super. 391, 399, 762 A.2d 677 (App.Div.2000) (despite the apparent severity of the victim's assault, the only physical manifestation, a broken nose, does not suffice as a NERA predicate serious bodily injury). At the scene, an emergency medical technician observed "bruising to the [left] eye area, her eye was swollen...." There were lacerations and abrasions to both legs with multiple bruising. The victim's respiration, pulse and blood pressure were normal. Her pupils were checked for dilation but were normal. The EMT observed no objective signs of unconsciousness and that the victim was alert. The emergency room physician who examined her shortly thereafter found her alert and in no acute distress. He did find swelling and "facial bruising over the left eye of the left side of the face, also right side of the face," her "lip was swollen", and there was "bruising on her upper and lower extremities, ..." "mainly on the left wrist, on the upper arms and also on the legs." The injuries were not life threatening. There was evidence of hematoma under the scalp and fluid in the sinus cavities of the victim's face, but a CAT scan and X-rays were negative. There were some further residual episodes of dizziness, nausea and vomiting, but no neurological abnormalities were found and a subsequent repeat CAT scan was negative.
Serious bodily injury, of course, requires proof of "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or a protracted loss or impairment of the function of any bodily member or organ." N.J.S.A. 2C:11-1b. Although the violence inflicted upon the victim here should not be trivialized, it is not unreasonable to say the jury may well have concluded that, through luck perhaps, the victim did not incur serious bodily injury, but that, somewhere along the course of the events, such harm was attempted.
*572 Keeping in mind the cautions expressed not only by other appellate panels, but our Supreme Court, that NERA was intended to apply to the "most serious offenses" and thus, must be strictly construed, can we conclude the jury determined such attempt was occasioned by the use of the deadly weapons found to have been involved on the third-degree conviction? To begin with, we do not know which weapon or weapons was or were found by the jury to have been used. The only eyewitness, a neighbor, did not see the use of any of the weapons and the entire encounter he did observe could well have, alone, provided the factual basis for the jury's verdict on the second-degree aggravated assault. Unlike McLean, then, where we could be sure that the third-degree deadly weapon was, in fact, used in the course of the second-degree attempted serious bodily injury, we cannot be so sure here.
We are, as always, loath to put a victim through the ordeal of another jury trial, particularly one who a jury has already concluded was, in fact, criminally harmed by the defendant. But we must be guided by the governing legal precedents which require a jury finding, beyond a reasonable doubt, that the necessary NERA predicate was proven by the State before a NERA enhanced sentence can be imposed. Because we cannot say the first jury verdict demonstrates such a finding, we must remand for a jury trial on the NERA predicate. We leave it to the trial judge, prosecutor and defense attorney to resolve the parameters of such a trial.
Reversed as to the NERA sentence enhancement, affirmed in all other respects.
NOTES
[1] No Early Release Act, N.J.S.A. 2C:43-7.2.
[2] Effective June 29, 2001, N.J.S.A. 2C:43-7.2 no longer includes the definition of "violent crime" that has spurred concerns such as those raised here. While the NERA enhancement continues to be imposed only upon first or second-degree convictions, the statute now expressly identifies those crimes to which a NERA enhancement will apply. Second-degree aggravated assault under N.J.S.A. 2C:12-1b is one of the crimes specifically identified. Moreover, N.J.S.A. 2C:43-7.2d now extends to the depicted crimes "or an attempt or conspiracy" to commit them. L. 2001, c. 129, § 1.
[3] The following comment by the trial judge in her "Statement of Reasons and Sentence," amply supported by the record, explains the dilemma:

In the present case, the jury was instructed that the defendant could be guilty of a 2° Aggravated Assault if he either caused or attempted to cause a serious bodily injury. A "serious bodily injury" is an injury which "creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." In the present case the victim testified to continuing balance problems, dizziness, and loss of memory. It is not clear whether the jury therefore found that these deficits constitute a protracted loss or impairment of the function of any bodily member or organ or if the jury instead found that the defendant was guilty because he attempted to cause permanent disfigurement or attempted to cause protracted impairment by attacking her with numerous objects. Stated more simply, it is difficult to tell whether the jury found [defendant] guilty of attempting to cause serious bodily injury or causing bodily injury.
[4] Because the June 29, 2001, amendments, infra, n. 2, remove the definition of "violent crime" which included not only the "serious bodily injury" predicate but the alternate "use or threatened use of a deadly weapon" predicate, these decisions, and the pre-June 29, 2001, NERA issues that generated them, will "become history"as the saying goes. Thus, for instance, under the June 29, 2001, amendment, a conviction of N.J.S.A. 2C:15-1 will trigger a NERA sentence enhancement, regardless of whether a deadly weapon was used or threatened. N.J.S.A. 2C:43-7.2d(9).
[5] Defendant has never asserted that these objects, speakers, candle holders, opera glasses, statue and a door, would not constitute NERA deadly weapons. We suppose that is so. State v. Hernandez, 338 N.J.Super. 317, 768 A.2d 1062 (App.Div.2001) (baseball bat), State v. Grawe, supra, 327 N.J.Super. 579, 744 A.2d 246 (hammer); State v. Ainis, 317 N.J.Super. 127, 133, 721 A.2d 329 (Law Div.1998) (hypodermic needle).