878 A.2d 724

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. MICHAEL J. NATALE, DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued March 14, 2005—Decided August 2, 2005.

460

*Jeanne Screen,* Deputy Attorney General argued the cause for appellant and cross-respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Ms. Screen, Mark Paul Cronin,* Deputy Attorney General and *Carol M. Henderson,* Assistant Attorney General, of counsel and on the briefs).

*Edward J. Crisonino* argued the cause for respondent and cross-appellant.

*Linda Mehling,* Assistant Deputy Public Defender, and *Steven G. Sanders* argued the cause for *amici curiae,* Office of the Public Defender and Association of Criminal Defense Lawyers of New Jersey (*Yvonne Smith Segars,* Public Defender, attorney for Office of the Public Defender and *Arseneault Fassett & Mariano,* attorneys for Association of Criminal Defense Lawyers of New Jersey; *Ms. Mehling, Mr. Sanders* and *Marcia H. Blum,* Assistant Deputy Public Defender, on the joint briefs).

Justice ALBIN delivered the opinion of the Court.

In *Blakely v. Washington,* 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004), the United States Supreme Court ruled that a

sentence based on judicial factfinding that exceeds the maximum sentence authorized by either a jury verdict or a defendant's admissions at a plea hearing runs afoul of the Sixth Amendment right to trial by jury. That seemingly simple pronouncement has called into question the constitutionality of sentencing schemes across the nation.

■ Under New Jersey's Code of Criminal Justice, a defendant cannot be sentenced to a period of imprisonment greater than the presumptive term for the crime he committed, unless the judge finds one or more statutory aggravating factors. *See N.J.S.A.* 2C:44–1(f)(1). The Code does not require that a judicial finding of an aggravating factor be encompassed by the jury verdict or that it be based on an admission by the defendant at a plea hearing. We now hold that a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee. To bring the Code into compliance with the Sixth Amendment in a way that the Legislature would have intended, we are compelled to eliminate presumptive terms from the sentencing process. Hereafter, without reference to presumptive terms, judges will sentence defendants within the statutory range after identifying and weighing the applicable mitigating and aggravating factors.

## I.

### A.

Defendant Michael Natale and his girlfriend Ginamarie Lerro lived together in an apartment in Runnemede, New Jersey. On January 10, 1999, believing that Lerro intended to leave him for her estranged husband, defendant exploded in a rage of violence in their apartment and brutally beat her over the course of an hour. Defendant struck Lerro in the head with a stereo speaker and candleholder, rammed her head into a wall, and ripped out clumps of her hair. As Lerro struggled to escape, defendant

kicked and punched her in the head, face, and upper body, and repeatedly threatened to kill her.

As Lerro crawled down the hallway toward the front door, a neighbor who had overheard the violence knocked on it. Lerro begged the neighbor not to leave, telling him that defendant was going to kill her. She then somehow managed to slip past defendant. Once out the front door, she fell to her knees and clung to the neighbor's leg. Defendant pulled Lerro by the hair until she finally let go and threatened the neighbor, who then retreated to his apartment. Defendant continued to punch Lerro in the face, stopping only to rip a storm door off its hinges and pummel her with it.

With no let-up to the assault, defendant threw Lerro, who was wearing only shorts and a sweatshirt, onto the snow-covered ground and then dragged her by the hair, face down on the concrete sidewalk. Defendant bashed Lerro's face into a nearby wooden pillar and ripped off her clothing, exposing her to the bitter cold as she drifted in and out of consciousness. In the course of dragging Lerro back into the apartment, defendant smashed her head into the door and, once inside, beat her in the face and head with opera glasses and a ceramic statue, all the while threatening to kill her.

When the police eventually arrived, Lerro staggered from the apartment, bleeding and frantic. She was taken by ambulance to the hospital, where she was diagnosed as suffering from head trauma, fluid in her sinus, multiple contusions, and abrasions. The residual effects of the prolonged, vicious assault on Lerro were loose teeth, scars, memory deficits, and dizziness.

A Camden County Grand Jury indicted defendant for first-degree attempted murder, *N.J.S.A.* 2C:5–1, 2C:11–3(a) (count one); third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(2) (count two); fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d) (count three); third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) (count four); third-degree terroristic threats, *N.J.S.A.* 2C:12–3(a), (b) (count

five); and third-degree criminal restraint, *N.J.S.A.* 2C:13–2(a), (b) (count six).

After a jury trial, defendant was acquitted of the attempted murder charge but found guilty of the lesser-included offense of second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1), and all of the remaining charges against him. Before imposing sentence, the trial court found four aggravating factors. The court determined that the offense "was committed in an especially heinous, cruel, or depraved manner." *N.J.S.A.* 2C:44–1(a)(1). Given the severity of the injuries and their long-term effects on the victim, the court considered the "gravity and seriousness of harm inflicted on the victim." *N.J.S.A.* 2C:44–1(a)(2). The court also noted that defendant subjected the victim to regular beatings and constant threats during their relationship and thus found that there was a risk that he would commit another offense.[1] *N.J.S.A.* 2C:44–1(a)(3). Last, the court determined that there was a need for both personal and general deterrence. *N.J.S.A.* 2C:44–1(a)(9).[2] The court found only one mitigating factor, that defendant had no prior criminal record. *N.J.S.A.* 2C:44–1(b)(7).

---

[1] Lerro gave testimony on this topic at a hearing outside the presence of the jury.

[2] The four statutory aggravating factors found by the court are provided in *N.J.S.A.* 2C:44–1(a):

(1) The nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner;

(2) The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance;

(3) The risk that the defendant will commit another offense;

. . . .

(9) The need for deterring the defendant and others from violating the law. . . .

Based on those findings, the court sentenced defendant to a nine-year term of imprisonment on the second-degree aggravated assault conviction, subject to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2. Under NERA, defendant was required to serve 85% of that sentence, a period of seven-and-one-half years without parole eligibility. Defendant also received five-year terms on both the terroristic threats and criminal restraint convictions, with those two sentences running concurrent with each other and consecutive to the assault sentence. The remaining charges were merged into those convictions. Defendant's aggregate sentence was a fourteen-year state prison term with a seven-and-one-half-year parole disqualifier.

The Appellate Division vacated the NERA parole disqualifier because the second-degree aggravated assault verdict did not specify whether defendant inflicted serious bodily injury or attempted to do so. *State v. Natale,* 348 *N.J.Super.* 625, 627, 635, 792 *A.2d* 565 (App.Div.2002).[3] This Court affirmed the Appellate Division and remanded, giving the State the option of letting a jury decide whether defendant caused serious bodily injury or foregoing the NERA parole disqualifier. *State v. Natale,* 178 *N.J.* 51, 53–54, 834 *A.2d* 1024 (2003) (per curiam) (*Natale I* ).

On remand, the State elected not to pursue the NERA parole disqualifier. In resentencing defendant, the court enumerated the same aggravating factors and mitigating factor that it found in the first sentencing proceeding. Because it was clearly convinced that the aggravating factors substantially outweighed the one mitigating factor, the court again imposed a nine-year sentence on the second-degree aggravated assault conviction, and added a four-

[3] At the time, a court could not impose a NERA sentence for aggravated assault unless the jury found that the defendant caused serious bodily injury. *Natale, supra,* 348 *N.J.Super.* at 628, 792 *A.2d* 565; *see also State v. Johnson,* 166 *N.J.* 523, 544, 766 *A.2d* 1126 (2001). NERA was amended on June 29, 2001, and now automatically applies to a second-degree aggravated assault conviction. *See N.J.S.A.* 2C:43–7.2(d)(4); *see also State v. Natale,* 373 *N.J.Super.* 226, 237 n. 6, 861 *A.2d* 148 (App.Div.2004).

and-one-half-year parole disqualifier pursuant to *N.J.S.A.* 2C:43–6(b). In all other respects, the sentence remained unchanged, leaving defendant with an aggregate sentence of a fourteen-year term with a four-and-one-half-year parole ineligibility period. Defendant appealed.

### B.

In light of *Blakely, supra*, the Appellate Division determined that the sentences imposed by the trial court violated defendant's Sixth Amendment right to trial by jury because " '[t]he jury's verdict alone' " did not authorize the sentences. *State v. Natale*, 373 *N.J.Super.* 226, 235–36, 861 *A.*2d 148 (App.Div.2004) (quoting *Blakely, supra*, 542 *U.S.* at ——, 124 *S.Ct.* at 2538, 159 *L.Ed.*2d 403). The panel reasoned that based on the jury verdict alone, the court could not impose sentences exceeding the presumptive terms set forth in *N.J.S.A.* 2C:44–1(f)(1), a seven-year term for second-degree aggravated assault and four-year terms for the third-degree offenses of terroristic threats and criminal restraint. *Id.* at 235–36, 861 *A.*2d 148. Because it found four aggravating factors, the trial court sentenced defendant above the presumptive terms, although still within the statutory ranges for second- and third-degree offenses. *Id.* at 229–30, 861 *A.*2d 148. Those sentences above the presumptive terms, the panel concluded, ran afoul of the Sixth Amendment because they were based on judicial factfindings, not jury findings. *Id.* at 236, 861 *A.*2d 148.

The panel held New Jersey's sentencing scheme to be unconstitutional because "it permits the trial judge to increase the presumptive sentence" based on the judge's finding of aggravating factors, other than a prior conviction, and because it does not require a jury to determine those factors beyond a reasonable doubt. *Ibid.* The panel, therefore, reversed and remanded to the trial court "to consider the appropriate remedy." *Ibid.* The panel gave the State the option of withdrawing its earlier waiver of the NERA parole ineligibility period to pursue a jury trial of the "NERA factors." *Id.* at 236–37, 861 *A.*2d 148.

It also permitted the State to "elect to try [to the jury] the relevant aggravating factors, previously found by the trial judge." *Id.* at 237, 861 *A*.2d 148. Alternatively, if the State chose not to submit the aggravating factors to the jury, the trial court would be foreclosed from imposing a sentence above the presumptive term. *Ibid.* The panel upheld the constitutionality of the trial court's power to impose a period of parole ineligibility pursuant to *N.J.S.A.* 2C:43–6(b). *Id.* at 237–38, 861 *A*.2d 148. Last, the panel "decline[d] to prohibit the imposition of consecutive sentences based on judicial fact-finding." *Id.* at 238, 861 *A*.2d 148. The panel stayed its decision pending consideration of this case by this Court. *Id.* at 238–39, 861 *A*.2d 148.

We granted the State's petition and defendant's cross-petition, *State v. Natale*, 182 *N.J.* 425, 866 *A*.2d 981 (2005), on issues related to the constitutionality of judicial factfinding that raises a sentence above the presumptive statutory term. We ordered that this case be argued with *State v. Abdullah*, 372 *N.J.Super.* 252, 858 *A*.2d 19 (App.Div.), *certif. granted*, 182 *N.J.* 208, 863 *A*.2d 365 (2004), and granted *amicus curiae* status to the Association of Criminal Defense Lawyers of New Jersey and the Office of the Public Defender.

## II.

### A.

Defendant argues that, based on the jury verdict alone, the maximum sentences that could have been imposed pursuant to the presumptive sentences set forth in *N.J.S.A.* 2C:44–1(f) were a seven-year term for second-degree aggravated assault and four-year terms for the third-degree crimes of terroristic threats and criminal restraint. Defendant contends that the trial court's imposition of sentences beyond the presumptive terms based on its finding of four aggravating factors violated his Sixth Amendment right to trial by jury. Defendant submits that, because the presumptive term is the real maximum for Sixth Amendment

purposes, the aggravating factors in this case should have been submitted to the jury. Accordingly, he urges this Court to reduce his sentence to the statutory presumptive terms and on remand, to bar on double jeopardy grounds a jury trial on the aggravating factors.

The State counters that *N.J.S.A.* 2C:44–1(f)'s presumptive terms do not represent the "statutory maximums" authorized by the jury verdict. Furthermore, it claims that our trial courts always have exercised discretion in setting sentences within the statutory range, unrestrained by the presumptive sentencing scheme in *N.J.S.A.* 2C:44–1(f).

In addressing the issues in this case, we first review the traditional role that judges have played in sentencing and then the recent developments in constitutional jurisprudence that have brought about this appeal.

## B.

■ For centuries, sentencing judges have "exercise[d] a wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York,* 337 *U.S.* 241, 246, 69 *S.Ct.* 1079, 1082, 93 *L.Ed.* 1337, 1341 (1949). Before sentencing, trial courts endeavor to have " 'the fullest information possible concerning the defendant's life and characteristics.' " *State v. Marzolf,* 79 *N.J.* 167, 176–77, 398 *A.*2d 849 (1979) (quoting *Williams, supra,* 337 *U.S.* at 247, 69 *S.Ct.* at 1083, 93 *L.Ed.* at 1342). The goal is to provide the sentencing judge with the "composite picture of the 'whole man.' " *State v. Green,* 62 *N.J.* 547, 566, 303 *A.*2d 312 (1973).

The broad discretion reposed in judges has allowed them to "impose[ ] sentence[s] *within statutory limits* in the individual case." *Apprendi v. New Jersey,* 530 *U.S.* 466, 481, 120 *S.Ct.* 2348, 2358, 147 *L.Ed.*2d 435, 449 (2000). Historically, and in keeping with the right to trial by jury, it has been the jury's verdict that has triggered the criminal statute's sentencing range. *See id.* at

482–83, 120 *S.Ct.* at 2359, 147 *L.Ed.*2d at 450. However, many modern legislative sentencing schemes place a ceiling on the sentence that can be imposed based on the jury verdict alone, but allow for judicial factfinding to increase the sentence up to the maximum allowed by the statute.[4] Such schemes appear to be in conflict with the Constitution.

■■■■ The Sixth Amendment jury trial guarantee and the Fourteenth Amendment Due Process Clause confer to every criminal defendant not only the right to have "the truth of every accusation" proven to a jury of his "equals," but also the "right to have the jury verdict based on proof beyond a reasonable doubt." *Id.* at 477–78, 120 *S.Ct.* at 2356, 147 *L.Ed.*2d at 447 (internal quotations omitted) (emphasis removed); *see also U.S. Const.* amends. VI, XIV. Accordingly, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring v. Arizona,* 536 *U.S.* 584, 602, 122 *S.Ct.* 2428, 2439, 153 *L.Ed.*2d 556, 572 (2002). In deciding the question of what facts must be subject to a jury finding, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi, supra,* 530 *U.S.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457. With those principles in mind, we look to a series of United States Supreme Court decisions that limit the power of a judge to impose a sentence beyond the range allowed by the jury's verdict.

---

[4] *See, e.g., State v. Brown,* 209 *Ariz.* 200, 99 *P.*3d 15, 17–18 (2004); *People v. Black,* 113 *P.*3d 534, 537–39, 29 *Cal.Rptr.*3d 740, 743–45 (2005); *Lopez v. People,* 113 *P.*3d 713, 723–25 (Colo.2005); *Smylie v. State,* 823 *N.E.*2d 679, 683 (Ind. 2005); *State v. Shattuck,* 689 *N.W.*2d 785, 786 (Minn.2004) (per curiam); *State v. Dilts,* 337 *Or.* 645, 103 *P.*3d 95, 99 (2004); *State v. Gomez,* 163 *S.W.*3d 632, 658–60 (Tenn.2005), *called into doubt by* Act of May 18, 2005, ch. 353, 2005 Tenn. Pub. Acts S.B. 2249 (amending Tenn.Code Ann. § 40–35–210(c)); *State v. Hughes,* 154 *Wash.*2d 118, 110 *P.*3d 192, 200 n. 3 (2005).

In *Apprendi v. New Jersey, supra,* the Court examined New Jersey's " 'hate crime' " statute, which allowed a judge to impose an "enhanced" sentence based upon a judicial finding by a preponderance of the evidence. *Id.* at 468–70, 120 *S.Ct.* at 2351–52, 147 *L.Ed.*2d at 442–43 (citing *N.J.S.A.* 2C:44–3(e) (repealed 2001)). In that case, the defendant fired several shots "into the home of an African–American family that had recently moved into a previously all-white neighborhood in Vineland, New Jersey." *Id.* at 469, 120 *S.Ct.* at 2351, 147 *L.Ed.*2d at 442. The defendant pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4(a), as well as to a lesser charge. *Id.* at 469–70, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 442. On the second-degree charges to which he pled guilty, he faced a prison term of five to ten years. *Id.* at 470, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 443. Under the " 'hate crime' " statute the judge was empowered to mete out a sentence effectively one degree higher, within the range of ten to twenty years, provided the judge found the crime was committed " 'with a purpose to intimidate an individual or group of individuals' " for reasons such as race or color. *Id.* at 468–69, 120 *S.Ct.* at 2351, 147 *L.Ed.*2d at 442 (quoting *N.J.S.A.* 2C:44–3(e) (repealed 2001)).

After a sentencing hearing, the trial court determined that a "preponderance" of the "evidence supported a finding 'that the crime was motivated by racial bias' " and therefore imposed a twelve-year prison term, which was two years above the "maximum" for a second-degree crime. *Id.* at 470, 471, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 443. Therefore, based solely on judicial factfinding, the defendant's sentence exceeded the "statutory maximum" for a second-degree crime. *Id.* at 490–92, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455–56.

The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. Finding the hate crime statute to be "an

unacceptable departure from the jury tradition," the Court declared the defendant's sentence unconstitutional. *Id.* at 497, 120 *S.Ct.* at 2366–67, 147 *L.Ed.*2d at 459. The Court noted, however, that when imposing a sentence within the statutory limits, judges still could consider the traditional factors relating to the crime and the offender. *Id.* at 481, 120 *S.Ct.* at 2358, 147 *L.Ed.*2d at 449.

Applying the principles articulated in *Apprendi, supra,* the Court in *Ring v. Arizona, supra,* struck down provisions of Arizona's capital sentencing scheme that allowed a judge to impose the death penalty based solely on a judicial finding of statutory aggravating circumstances. 536 *U.S.* at 588–89, 122 *S.Ct.* at 2432, 153 *L.Ed.*2d at 563–64. The defendant in *Ring, supra,* was convicted of first-degree murder by a jury. *Id.* at 591–92, 122 *S.Ct.* at 2433–34, 153 *L.Ed.*2d at 565. Without any additional judicial factfinding, the maximum allowable sentence under Arizona law was life imprisonment. *Id.* at 592, 122 *S.Ct.* at 2434, 153 *L.Ed.*2d at 566. The defendant was sentenced to death based on the judge's finding of aggravating circumstances. *Id.* at 594–95, 122 *S.Ct.* at 2435–36, 153 *L.Ed.*2d at 567–68. The judicially imposed death sentence in that case therefore violated the defendant's Sixth Amendment right to trial by jury. *Id.* at 609, 122 *S.Ct.* at 2443, 153 *L.Ed.*2d at 576–77.

In *Blakely v. Washington, supra,* the Court refined *Apprendi, supra,* by clarifying what constituted the statutory maximum for sentencing purposes. 542 *U.S.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403. In that case, the Court reviewed Washington's criminal sentencing scheme in the context of the defendant's guilty plea to the abduction of his estranged wife. *Id.* at ——, 124 *S.Ct.* at 2534, 159 *L.Ed.*2d 403. At his plea hearing, the defendant admitted to "the elements of second-degree kidnaping" and allegations of "domestic violence and use of a firearm," "but no other relevant facts." *Id.* at ——, 124 *S.Ct.* at 2534–35, 159 *L.Ed.*2d 403. Under Washington's sentencing system, second-degree kidnapping was punishable by a term of imprisonment not to exceed ten years. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. In

accordance with a plea agreement, the State recommended a sentence within the " 'standard range' " for "second-degree kidnaping with a firearm"—forty-nine to fifty-three months. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403.

Under Washington's law, however, "[a] judge may impose a sentence above the standard range if he finds 'substantial and compelling reasons justifying an exceptional sentence.' " *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. Based on the victim's description of the kidnapping, the judge determined that the defendant "had acted with 'deliberate cruelty,' " and sentenced the defendant to an "exceptional" term of ninety-months, thirty-seven months above the maximum sentence in the standard range. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. In a post-sentencing hearing, the judge made thirty-two findings of fact to support his "exceptional" sentence. *Id.* at ——, 124 *S.Ct.* at 2535–36, 159 *L.Ed.*2d 403.

The Supreme Court observed that the trial court's factfinding of " 'deliberate cruelty' " was "neither admitted by [the defendant] nor found by a jury." *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403. The Court defined "the 'statutory maximum' for *Apprendi* purposes [as] the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" [5] *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403. The Court explained that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, *but the maximum he may impose without any additional findings.*" *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403 (emphasis added). Based on the admissions in the defendant's guilty plea, the judge did not have the authority to impose a ninety-month sentence; the "judge acquire[d] that authority only

---

[5] The defendant waived his jury trial right only to the extent of his admissions at his plea hearing. *See Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2534–35, 2537–38, 2541, 159 *L.Ed.*2d 403.

upon finding some additional fact." *Id.* at ——, 124 *S.Ct.* at 2537–38, 159 *L.Ed.*2d 403.

As such, the Court found that Washington's sentencing procedure violated the Sixth Amendment. *Id.* at ——, 124 *S.Ct.* at 2538, 159 *L.Ed.*2d 403. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at ——, 124 *S.Ct.* at 2541, 159 *L.Ed.*2d 403. Whether the sentence enhancement was required or merely allowed by the judge's factfinding, it was not authorized by the defendant's admissions at his guilty plea. *Id.* at —— n. 8, 124 *S.Ct.* at 2538 n. 8, 159 *L.Ed.*2d 403.

The Court emphasized that the Sixth Amendment "is not a limitation on judicial power, but a reservation of jury power." *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. It reaffirmed the traditional discretionary power of a judge to sentence within the applicable sentencing range authorized by the verdict or the defendant's guilty plea. *See id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. It also recognized that indeterminate sentencing schemes "increase[ ] judicial discretion, ... but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. Thus, in an indeterminate sentencing system "the judge may punish burglary with 10 to 40 years" because "every burglar knows he is risking 40 years in jail." *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. On the other hand, in a determinate sentencing system in which the maximum sentence for burglary is "a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury." *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403.

The road from *Blakely, supra,* led directly to *United States v. Booker,* in which the Supreme Court struck down those portions of the Federal Sentencing Guidelines (Guidelines) that authorized

judges, based on their own factfindings, to impose sentences exceeding those allowed by the jury verdict alone. —— *U.S.* ——, ——, 125 *S.Ct.* 738, 746, 757, 160 *L.Ed.*2d 621 (2005). In *Booker, supra,* a jury found the defendant guilty of possession with intent to distribute at least fifty grams of cocaine base in violation of 21 *U.S.C.* § 841(a)(1), a crime punishable by a sentence of ten years to life imprisonment. —— *U.S.* at ——, 125 *S.Ct.* at 746, 160 *L.Ed.*2d 621.[6] The jury heard evidence that the defendant had possessed 92.5 grams of cocaine. *Id.* at ——, 125 *S.Ct.* at 746, 160 *L.Ed.*2d 621. Based on that drug quantity and Booker's criminal history, the Guidelines mandated that the trial judge choose a " 'base' sentence" between seventeen years and six months and twenty-one years and ten months. *Id.* at ——, 125 *S.Ct.* at 746, 751, 160 *L.Ed.*2d 621. In a sentencing proceeding, however, the trial judge "concluded by a preponderance of the evidence that [the defendant] had possessed an additional 566 grams of crack and that he was guilty of obstructing justice." *Id.* at ——, 125 *S.Ct.* at 746, 160 *L.Ed.*2d 621. Based on those findings, the judge was compelled under the Guidelines to impose a sentence between thirty years and life imprisonment. *Id.* at ——, 125 *S.Ct.* at 746, 160 *L.Ed.*2d 621. The judge imposed a thirty-year term—a sentence eight years and two months longer than the maximum sentence authorized by the jury verdict. *Id.* at ——, 125 *S.Ct.* at 746, 160 *L.Ed.*2d 621.

Delivering the opinion of the Court with regard to the constitutionality of the Guidelines, Justice Stevens found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the" Guidelines. *Id.* at ——, 125 *S.Ct.* at 746, 751, 160 *L.Ed.*2d 621. Like the judicial determination that the defendant acted with deliberate cruelty in *Blakely, supra,* the judge's conclusion that

---

[6] Although the Court also addressed the sentencing of defendant Ducan Fanfan, *Booker, supra,* —— *U.S.* at ——, 125 *S.Ct.* at 747, 160 *L.Ed.*2d 621, we provide only the facts and procedural history concerning the defendant Booker as an aid to this discussion.

the defendant possessed 566 grams of crack cocaine violated his Sixth Amendment jury trial right. *See id.* at ——, 125 *S.Ct.* at 751, 756, 160 *L.Ed.*2d 621. In *Booker, supra,* the judge "found facts beyond those found by the jury" to justify imposing a sentence exceeding the range authorized by the jury's verdict. *Id.* at ——, 125 *S.Ct.* at 751, 160 *L.Ed.*2d 621.

The constitutional flaw in the Guidelines was that "the judge, not the jury, . . . determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance" of the evidence. *Id.* at ——, 125 *S.Ct.* at 751, 160 *L.Ed.*2d 621. The Court, however, recognized that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.* at ——, 125 *S.Ct.* at 750, 160 *L.Ed.*2d 621.[7]

In fashioning a remedy for the constitutionally defunct provisions of the Guidelines, Justice Breyer wrote for the Court. *Id.* at

---

[7] Justice Stevens noted that had the Guidelines been "merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." *Booker, supra,* —— *U.S.* at ——, 125 *S.Ct.* at 750, 160 *L.Ed.*2d 621. He concluded, however, that the Guidelines were not advisory, but rather "mandatory and binding on all judges." *Id.* at ——, 125 *S.Ct.* at 750, 160 *L.Ed.*2d 621. Some state courts have interpreted that language to mean that judicial factfinding that is the basis for a sentence in excess of the range permitted by the jury verdict is constitutionally unobjectionable, provided that the judge is not *mandated* to increase the sentence. *See, e.g., Gomez, supra,* 163 *S.W.*3d at 661 (*"Booker* explains that the mandatory increase of a sentence is the crucial issue which courts must consider in determining whether a particular sentencing scheme violates the Sixth Amendment."). Such a narrow reading of *Booker, supra,* would gut the core principle enunciated in *Apprendi, supra, Blakely, supra,* and *Booker, supra*—that judicial factfinding that is the basis for increasing a sentence beyond the maximum authorized by the jury verdict or the defendant's admissions at his guilty plea runs afoul of the jury trial guarantee of the Sixth Amendment. *See Blakely, supra,* 542 *U.S.* at ——, —— n. 8, 124 *S.Ct.* at 2538, 2538 n. 8, 159 *L.Ed.*2d 403. We do not believe a fair reading of *Booker, supra,* renders a discretionary increase above the permissible sentencing range any more constitutionally palatable than a mandatory increase when either is based on judicial factfinding.

——, 125 *S.Ct.* at 756, 160 *L.Ed.*2d 621. The Court found the statutory provision making the Guidelines mandatory "incompatible" with the Court's "constitutional holding." *Id.* at ——, 125 *S.Ct.* at 756, 160 *L.Ed.*2d 621. To bring the Guidelines into conformity with the commands of the Sixth Amendment, the Court, in essence, converted the Guidelines into an indeterminate sentencing scheme in which the maximum sentence is the top of the range of the applicable criminal statute. *See id.* at ——, 125 *S.Ct.* at 757, 160 *L.Ed.*2d 621. The Court accomplished that goal by excising from the Sentencing Reform Act of 1984 the statutory provisions that made the Guidelines mandatory and that governed appellate review of sentences under that regime. *Id.* at ——, 125 *S.Ct.* at 756–57, 160 *L.Ed.*2d 621. Significantly, the Court rendered the Guidelines "effectively advisory." [8] *Id.* at ——, 125 *S.Ct.* at 757, 160 *L.Ed.*2d 621.

Looking to "what 'Congress would have intended' in light of [its] constitutional holding," the Court chose not to strike down the entirety of the Sentencing Reform Act. *Id.* at ——, 125 *S.Ct.* at 757, 160 *L.Ed.*2d 621 (quoting *Denver Area Ed. Telecomms. Consortium, Inc. v. FCC,* 518 *U.S.* 727, 767, 116 *S.Ct.* 2374, 2397, 135 *L.Ed.*2d 888, 918 (1996) (plurality opinion)). The Court attempted to preserve "Congress' basic statutory goal—a system that diminishes sentencing disparity." *Id.* at ——, 125 *S.Ct.* at 759, 160 *L.Ed.*2d 621. The Court rejected a remedy that would have engrafted onto the Sentencing Reform Act a requirement that juries find the facts that judges formerly found under the Guidelines because to do so "would destroy the system" of uniform sentencing that Congress intended. *Id.* at ——, 125 *S.Ct.* at 757, 760, 160 *L.Ed.*2d 621. In the Court's view, judicial factfinding in sentencing was more in tune with the Congressional goal of

---

[8] The Court removed 18 *U.S.C.A.* § 3553(b)(1), which made the Guidelines mandatory, and the appellate review provisions of 18 *U.S.C.A.* § 3742(e), "which depends on the Guidelines' mandatory nature." *Booker, supra,* —— *U.S.* at ——, 125 *S.Ct.* at 756–57, 160 *L.Ed.*2d 621. The Court excised 18 *U.S.C.A.* § 3742(e) because it contained too many cross-references with 18 *U.S.C.A.* § 3553(b)(1). *Id.* at ——, 125 *S.Ct.* at 765, 160 *L.Ed.*2d 621.

sentence uniformity. *Id.* at ——, 125 *S.Ct.* at 760–61, 160 *L.Ed.*2d 621.

Under the new "advisory" Guidelines regime, district courts are required "to consider Guidelines ranges" and are permitted "to tailor the sentence in light of other statutory concerns as well." *Id.* at ——, 125 *S.Ct.* at 757, 160 *L.Ed.*2d 621. "[D]istrict courts, while not bound to apply the Guidelines, must consult [them] and take them into account when sentencing." *Id.* at ——, 125 *S.Ct.* at 767, 160 *L.Ed.*2d 621. Additionally, the Court replaced the excised statutory standard of appellate review under the old mandatory Guidelines with a " 'reasonableness' " standard under the new advisory Guidelines. *Id.* at ——, 125 *S.Ct.* at 765–66, 160 *L.Ed.*2d 621. Assessing the reasonableness of a sentence was "a practical standard of review already familiar to appellate courts." *Id.* at ——, 125 *S.Ct.* at 765, 160 *L.Ed.*2d 621. The Court was confident that a " 'reasonableness' " test on appellate review provided the best chance for sentencing uniformity. *Id.* at ——, 125 *S.Ct.* at 766–67, 160 *L.Ed.*2d 621. Finally, the holding in *Booker, supra,* was applied "to all cases on direct review." *Id.* at ——, 125 *S.Ct.* at 769, 160 *L.Ed.*2d 621 (citing *Griffith v. Kentucky,* 479 *U.S.* 314, 328, 107 *S.Ct.* 708, 716, 93 *L.Ed.*2d 649, 661 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final....")).

 We can distill the following principles from *Apprendi, supra, Blakely, supra,* and *Booker, supra.* A judge is authorized to impose a sentence within the range allowed by the jury verdict or by the defendant's admissions at a guilty plea after waiving his right to jury trial. *Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2536–37, 2541, 159 *L.Ed.*2d 403; *see also Booker, supra,* —— *U.S.* ——, 125 *S.Ct.* at 748–50, 160 *L.Ed.*2d 621. The judge also is authorized to sentence the defendant within a range consistent with the defendant's stipulation to judicial factfinding or with the defendant's prior convictions. *Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2536, 2541, 159 *L.Ed.*2d 403; *see also Apprendi,*

*supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455; *Almendarez–Torres v. United States,* 523 *U.S.* 224, 243, 118 *S.Ct.* 1219, 1230, 140 *L.Ed.*2d 350, 368 (1998) ("[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."). Aside from the exceptions for prior criminal convictions and consent to judicial factfinding, the Sixth Amendment prohibits a judge from imposing a sentence greater than that allowed by the jury verdict or by the defendant's admissions at a plea hearing. Those are the constitutional boundaries for the exercise of a judge's discretion at sentencing.[9]

Courts in states with sentencing schemes similar to our own have reached varying conclusions regarding the impact of *Blakely, supra,* and *Booker, supra,* on presumptive sentencing. Some have held that when the jury verdict or guilty plea authorizes only a presumptive term, an increase in the sentence above the presumptive based on judicial findings violates the Sixth Amendment. *See, e.g., Smylie, supra,* 823 *N.E.*2d at 683 (Indiana); *see also Brown, supra,* 99 *P.*3d at 17–18 (Arizona); *Shattuck, supra,* 689 *N.W.*2d at 786 (Minnesota); *Dilts, supra,* 103 *P.*3d at 98–100 (Oregon, in that case only). Others, including the Supreme Court of California, have concluded that there is no Sixth Amendment impediment when a judge increases a sentence above the presumptive term, but within the statutory range, based on *discretionary* judicial findings. *Black, supra,* 113 *P.*3d at 544, 29 *Cal.Rptr.*3d at 750; *see also Lopez, supra,* 113 *P.*3d at 730–31 (Colorado, when court relies on certain facts); *Gomez, supra,* 163 *S.W.*3d at 658 (Tennessee); *Hughes, supra,* 110 *P.*3d at 200, 200 n. 3 (Washington, when statute is applied properly). We reject the California approach because it appears to be in direct conflict with *Blakely, supra.*

---

[9] For reasons explained in *State v. Franklin,* 184 *N.J.* 516, 536–38, 878 *A.*2d 757 (2005), also decided today, we do not agree with those courts that have included admissions by a defendant outside of a plea hearing as the basis for increasing a sentence beyond the range permitted by a jury verdict. *See, e.g., Lopez, supra,* 113 *P.*3d at 723.

542 *U.S.* at —— n. 8, 124 *S.Ct.* at 2538 n. 8, 159 *L.Ed.*2d 403 ("Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence."); *see also supra* at 479 n. 7, 878 *A.*2d at 736, n. 7.

## III.

Before applying the constitutional principles outlined above, we first review the New Jersey Code of Criminal Justice's scheme of presumptive sentencing and graded crimes that guides judicial discretion in imposing sentence. *State v. Evers,* 175 *N.J.* 355, 387, 815 *A.*2d 432 (2003); *see also N.J.S.A.* 2C:1–4, 2C:43–1; *State v. Roth,* 95 *N.J.* 334, 356, 471 *A.*2d 370 (1984).[10]

Under the Code, crimes are punishable by a period of imprisonment in the following manner: first-degree crimes by a term between ten and twenty years, *N.J.S.A.* 2C:43–6(a)(1), with a presumptive term of fifteen years, *N.J.S.A.* 2C:44–1(f)(1)(b); second-degree crimes by a term between five and ten years, *N.J.S.A.* 2C:43–6(a)(2), with a presumptive term of seven years, *N.J.S.A.* 2C:44–1(f)(1)(c); third-degree crimes by a term between three and five years, *N.J.S.A.* 2C:43–6(a)(3), with a presumptive term of four years, *N.J.S.A.* 2C:44–1(f)(1)(d); and fourth-degree crimes by a term up to eighteen months imprisonment, *N.J.S.A.* 2C:43–6(a)(4), with a presumptive term of nine months, *N.J.S.A.* 2C:44–1(f)(1)(e).

---

10 When sentencing, a court first must make the "in-out" decision—whether a term of imprisonment is appropriate in light of the relevant presumptions for and against incarceration. *See N.J.S.A.* 2C:44–1(d), (e); *see also State v. Jabbour,* 118 *N.J.* 1, 5, 570 *A.*2d 391 (1990). A presumption of imprisonment applies to a person convicted of first- or second-degree crimes, *N.J.S.A.* 2C:44–1(d), and a presumption of non-imprisonment to a first time offender convicted of most third- or fourth-degree crimes, *N.J.S.A.* 2C:44–1(e). The presumptions in favor of imprisonment and non-imprisonment may be overcome as explained in *N.J.S.A.* 2C:44–1(d) and (e), and under defined circumstances a "court may sentence [a] defendant" convicted of a first- or second-degree crime "to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted," *N.J.S.A.* 2C:44–1(f)(2). Those presumptions are not at issue in this appeal.

When imposing a sentence of imprisonment, the court "shall impose" the presumptive term "unless the preponderance of aggravating or mitigating factors, as set forth in [*N.J.S.A.* 2C:44–1] a and b., weighs in favor of a higher or lower term" within the statutory range. *N.J.S.A.* 2C:44–1(f)(1).

Thus, in considering the applicability of the thirteen aggravating and thirteen mitigating factors in *N.J.S.A.* 2C:44–1(a) and (b), the presumptive term is the pivot point for moving a sentence up or down within the statutory range. *State v. Kromphold,* 162 *N.J.* 345, 352, 744 *A.*2d 640 (2000) ("The Code confers on a sentencing court the limited power to depart from the presumptive terms in *N.J.S.A.* 2C:44–1f(1) if it finds a preponderance of aggravating or mitigating factors."); *see also State v. Dalziel,* 182 *N.J.* 494, 503, 867 *A.*2d 1167 (2005) (holding that trial judges do not have "discretion to reject a mitigating factor altogether" despite "evidence in the record"). "If the mitigating and aggravating factors are in equipoise, the presumptive term applies." *Evers, supra,* 175 *N.J.* at 387, 815 *A.*2d 432. On the other hand, depending on whether the mitigating or aggravating factors preponderate, "[t]he court may impose the statutory minimum or maximum sentence." *State v. Jabbour,* 118 *N.J.* 1, 5, 570 *A.*2d 391 (1990). Importantly, unless the court finds at least one aggravating factor, it cannot exceed the applicable presumptive term. *Evers, supra,* 175 *N.J.* at 387, 815 *A.*2d 432; *see also N.J.S.A.* 2C:44–1(f)(1).

Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term. Accordingly, the "statutory maximum" for *Blakely* and *Booker* purposes is the presumptive sentence. Because the Code's system of presumptive sentencing allows judges to sentence beyond the "statutory maximum" based on their finding of aggravating factors, that system is incompatible with the holdings in *Apprendi, supra, Blakely, supra,* and *Booker, supra.* We, therefore, conclude that the Code's system of presumptive term sentencing violates the Sixth Amendment's right to trial by jury.

## IV.

In light of that holding, we now must provide the appropriate remedy for New Jersey's criminal sentencing system. From among the available options, we must select the one that is most compatible with the Code of Criminal Justice and that furthers the Legislature's objectives in establishing the Code.

"The dominant, if not paramount, goal of the Code is uniformity in sentencing." *Kromphold, supra,* 162 *N.J.* at 352, 744 *A.*2d 640. The Code was intended to replace "the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences." *Roth, supra,* 95 *N.J.* at 345, 471 *A.*2d 370; *see also State v. Dunbar,* 108 *N.J.* 80, 97, 527 *A.*2d 1346 (1987). Indeed, the Code's drafters " 'establishe[d] a general framework to guide judicial discretion in imposing sentences' " to ensure that similarly situated defendants did not receive dissimilar sentences. *State v. Hodge,* 95 *N.J.* 369, 374–75, 471 *A.*2d 389 (1984) (quoting *State v. Maguire,* 84 *N.J.* 508, 532, 423 *A.*2d 294 (1980)). In choosing a remedy, we remain mindful that "there can be no justice without a predictable degree of uniformity in sentencing." *Hodge, supra,* 95 *N.J.* at 379, 471 *A.*2d 389. It is our task to conform the Code to the Constitution in a way that the Legislature would have intended.

Accordingly, we reject any suggestion that our holding today requires that we invalidate the entirety of the Code's sentencing provisions. The Code itself anticipated that one day a court might declare one of its provisions unconstitutional and provided that "no such determination shall be deemed to invalidate or make ineffectual the remaining provisions of the title, or of any subtitle, chapter, article or section of the code." *N.J.S.A.* 2C:1–1(h). The Legislature did not intend that one defective timber would bring the whole structure down.

When necessary, courts have engaged in " 'judicial surgery' " to save an enactment that otherwise would be constitutionally doomed. *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462

A.2d 573 (1983) ("When a statute's constitutionality is doubtful, a court has the power to engage in 'judicial surgery' and through appropriate construction restore the statute to health."); *N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n*, 82 *N.J.* 57, 75, 411 *A.2d* 168 (1980) (noting that "[i]n appropriate cases, a court has the power to engage in 'judicial surgery' or the narrow construction of a statute to free it from constitutional doubt or defect"). We have little doubt that the Legislature would prefer that we sever the offending portion in order to save the major objectives of the Code's sentencing scheme.

Second, it is clear that the Legislature would not have wanted us to substitute jurors for judges as the factfinders determining the applicability of aggravating sentencing factors. The Code provides for "a strong judicial role in sentencing." *Roth, supra,* 95 *N.J.* at 352, 357–60, 471 *A.2d* 370. It delegates to judges, not juries, the consideration of aggravating factors for the purpose of imposing fair and uniform sentences. *See N.J.S.A.* 2C:44–1(a) (providing that "*the court* shall consider the following aggravating circumstances" (emphasis added)). The aggravating factors enumerated in *N.J.S.A.* 2C:44–1(a), for the most part, represent the traditional factors that judges historically have weighed in sentencing a defendant within the statutory range. *See, e.g., Almendarez–Torres, supra,* 523 *U.S.* at 243, 118 *S.Ct.* at 1230, 140 *L.Ed.*2d at 368. In sentencing, our trial courts consider all relevant information, including hearsay, unrestrained by the rules of evidence. *State v. Davis,* 96 *N.J.* 611, 619–20, 477 *A.2d* 308 (1984) ("A sentencing judge may exercise a far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed."); *State v. Humphreys,* 89 *N.J.* 4, 14, 444 *A.2d* 569 (1982) ("The whole person concept authorizes the sentencing court to comprehend in its deliberations a wide range of information that might otherwise be excluded by evidentiary norms.").

Further, if an aggravating factor were treated as the substantial equivalent of an element of an offense to be decided by a jury,

then arguably the constitutional right to a grand jury presentation would be implicated. *See State v. Fortin*, 178 *N.J.* 540, 632–33, 843 *A.*2d 974 (2004); *see also State v. Franklin*, 184 *N.J.* 516, 534, 878 *A.*2d 757 (2005). That would bring an additional and unintended layer of complexity to the sentencing process. Requiring jurors to make findings of fact in sentencing proceedings that in the past have been made by experienced and trained judges likely would not advance the principles of uniformity and fairness that animate the Code. Rather, it would lead to separate, costly, unwieldy, and perhaps protracted penalty trials at the conclusion of guilt-phase trials. The potential problems besetting such a system are detailed fully in *Booker, supra*, —— *U.S.* at ——, 125 *S.Ct.* at 760–61, 160 *L.Ed.*2d 621. In light of the Code's clear language and purpose, we cannot conceive that the Legislature would want this Court to allow juries to decide aggravating factors as the means of bringing the Code into compliance with the Constitution.

Third, we also reject making the presumptive term the maximum sentence a court could impose. To do so would gut the sentencing ranges, cutting them in half and presenting to convicted felons an unintended and undeserved windfall. We do not believe that the Legislature would have contemplated that as a viable solution.

Thus, we come to the constitutional remedy that will best preserve the major elements of our sentencing code and cause the least disruption to our criminal justice system: eliminating the presumptive terms. Without presumptive terms, the "statutory maximum" authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, *e.g.*, ten years for a second-degree offense, *N.J.S.A.* 2C:43–6(a)(2). In all other respects, the sentencing process will remain essentially unchanged. Judges will continue to determine whether credible evidence supports the finding of aggravating and mitigating factors and whether the aggravating or mitigating factors preponderate.

Although judges will continue to balance the aggravating and mitigating factors, they will no longer be *required* to do so from the fixed point of a statutory presumptive. We suspect that many, if not most, judges will pick the middle of the sentencing range as a logical starting point for the balancing process and decide that if the aggravating and mitigating factors are in equipoise, the midpoint will be an appropriate sentence. That would be one reasonable approach, but it is not compelled. Although no inflexible rule applies, reason suggests that when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range. In the past, defendants with long criminal records have been sentenced toward the upper part of the sentencing range. They should not anticipate a departure from that practice with the presumptive terms gone.

As always, every judge must "state on the record" how he or she arrived at a particular sentence. *N.J.S.A.* 2C:43-2(e); *see also R.* 3:21-4(g) ("[T]he judge shall state reasons for imposing [a] sentence including ... the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence."). We are confident that the judge's obligation to justify the sentence by referencing the mitigating and aggravating factors will continue to bring rationality to the process and minimize disparate sentencing.

The touchstone is that the sentence must be a reasonable one in light of all the relevant factors considered by the court. As before, trial judges still must identify the aggravating and mitigating factors and balance them to arrive at a fair sentence. *See Hodge, supra,* 95 *N.J.* at 379-80, 471 *A*.2d 389. Because we expect that judges will perform their duties conscientiously, we do not foresee a major change in sentencing patterns as a result of the removal of presumptive terms.

Under today's holding, appellate courts will continue to play "a central role" in carrying out the Code's goals of "promot-

ing uniformity and consistency" in sentencing. *State v. Jarbath,* 114 *N.J.* 394, 400, 555 *A.*2d 559 (1989). Sentencing decisions will continue to be reviewed under our established appellate sentencing jurisprudence. Appellate courts must determine whether the sentencing court followed the applicable sentencing guidelines. *Roth, supra,* 95 *N.J.* at 364–65, 471 *A.*2d 370.

As we recently explained in *Evers, supra,* "when reviewing a trial court's sentencing decision, '[a]n appellate court may not substitute its judgment for that of the trial court.'" 175 *N.J.* at 386, 815 *A.*2d 432 (quoting *State v. Johnson,* 118 *N.J.* 10, 15, 570 *A.*2d 395 (1990)); *see also Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370. Our "appellate courts are expected to exercise a vigorous and close review for abuses of discretion by the trial courts." *Jarbath, supra,* 114 *N.J.* at 401, 555 *A.*2d 559. However, they are "bound to affirm a sentence, even if [they] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989); *see also Roth, supra,* 95 *N.J.* at 364–65, 471 *A.*2d 370 (holding that appellate court may not overturn sentence unless "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience").

Removing the presumptive terms and preserving the remainder of the sentencing provisions of the Code will leave intact the Legislature's goal of uniform sentencing. The remedy we have chosen not only complies with the dictates of *Blakely, supra,* and *Booker, supra,* but also best achieves the Legislature's purpose in enacting the Code.

### V.

### A.

As discussed earlier, because defendant received a sentence higher than the presumptive term based on judicial findings

other than a prior criminal conviction, his sentence does not comply with the Sixth Amendment. We now turn to the remaining issues implicated by that decision. *Amici curiae*, the Association of Criminal Defense Lawyers of New Jersey and the Office of the Public Defender, argue that defendant (and those similarly situated) cannot be sentenced to terms of imprisonment greater than the presumptive terms without violating both the state and federal prohibitions against *ex post facto* laws. They argue that in light of *Blakely, supra*, the statutory maximum for future sentencing purposes is not the top of the sentencing range, *e.g.*, ten years for a second-degree crime, but rather the presumptive term, *e.g.*, seven years for a second-degree crime. We disagree.

 Both the state and federal constitutions forbid the legislative branch from passing *"ex post facto"* laws. *U.S. Const.* art. I, § 9, cl. 3; *U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3.[11] The prohibition against *ex post facto* laws was intended "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 *U.S.* 24, 28–29, 101 *S.Ct.* 960, 964, 67 *L.Ed.*2d 17, 23 (1981); *see also Fortin, supra*, 178 *N.J.* at 609, 843 *A.*2d 974 (same). Judicial decision-making also can violate the proscription against *ex post facto* laws. *Rogers v. Tennessee*, 532 *U.S.* 451, 456, 121 *S.Ct.* 1693, 1697, 149 *L.Ed.*2d 697, 704 (2001). For example, " 'unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law.' " *State v. Young*, 77 *N.J.* 245, 253, 390 *A.*2d 556 (1978) (per curiam) (quoting *Bouie v. Columbia*, 378 *U.S.* 347, 353, 84 *S.Ct.* 1697, 1702, 12 *L.Ed.*2d 894, 899 (1964)). Nevertheless, the *Ex Post Facto* Clause bars retroactive judicial enlargement of a criminal statute only where it is " 'unexpected and indefensible by reference to the law which had been expressed

---

[11] New Jersey's *ex post facto* clause shares "the same philosophical underpinning as" its federal counterpart, "and we therefore interpret the State provision as providing at least as much protection as its federal counterpart." *Fortin, supra*, 178 *N.J.* at 608 n. 8, 843 *A.*2d 974.

prior to the conduct in issue.'" *Rogers, supra,* 532 *U.S.* at 457, 121 *S.Ct.* at 1698, 149 *L.Ed.*2d at 705 (quoting *Bouie, supra,* 378 *U.S.* at 354, 84 *S.Ct.* at 1703, 12 *L.Ed.*2d at 900 (internal quotations omitted)).

An *ex post facto* penal law is defined by "two critical elements . . .: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver, supra,* 450 *U.S.* at 29, 101 *S.Ct.* at 964, 67 *L.Ed.*2d at 23 (footnote omitted); *see also Dobbert v. Florida,* 432 *U.S.* 282, 294, 97 *S.Ct.* 2290, 2299, 53 *L.Ed.*2d 344, 357 (1977) ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law."); *Fortin, supra,* 178 *N.J.* at 608, 843 *A.*2d 974. There is "no *ex post facto* violation . . . if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" *Miller v. Florida,* 482 *U.S.* 423, 433, 107 *S.Ct.* 2446, 2452–53, 96 *L.Ed.*2d 351, 362 (1987) (quoting *Hopt v. Utah,* 110 *U.S.* 574, 590, 4 *S.Ct.* 202, 210, 28 *L.Ed.* 262, 269 (1884)).

*Amici* rely on *Miller, supra,* in which the Florida Legislature adopted revised sentencing guidelines that retroactively exposed the defendant to a higher presumptive sentencing range than the guidelines in effect when he committed the crime. *Id.* at 427, 107 *S.Ct.* at 2449–50, 96 *L.Ed.*2d at 358. Following his conviction, the defendant was sentenced to the maximum in the new, higher presumptive range. *Id.* at 424, 428, 107 *S.Ct.* at 2448, 2450, 96 *L.Ed.*2d at 356, 358. The Court held that the revised guidelines were retroactively applied, "clearly disadvantage[d]" the defendant, and, therefore, violated the *Ex Post Facto* Clause. *Id.* at 428–29, 431, 107 *S.Ct.* at 2450, 2452, 96 *L.Ed.*2d at 359, 361.

Unlike *Miller, supra,* in this case there was no legislative alteration of the sentencing code. We have judicially adjusted the Code of Criminal Justice to comport with the constitutional standards enunciated in *Blakely, supra.* Today's holding can hardly be characterized as "unexpected" or "indefensible" in light of

*Apprendi, supra, Blakely, supra,* and *Booker, supra. See United States v. Lata,* 415 *F.*3d 107, 110–12, No. 04–2051, 2005 *WL* 1491483, at *2–4 (1st Cir.2005) (rejecting defendant's claim that *Booker* remedy was *ex post facto* ); *United States v. Scroggins,* 411 *F.*3d 572, 575 (5th Cir.2005) (same).

Defendant cannot claim that he did not have fair warning of the consequences that flowed from the crimes he committed. At the time he savagely battered his victim, the statutory range for second-degree crimes was five to ten years imprisonment, *N.J.S.A.* 2C:43–6(a)(2), and the range for the third-degree crimes was three to five years, *N.J.S.A.* 2C:43–6(a)(3). Defendant was on notice of the maximum penalties prescribed by the Legislature for those crimes.

Had we retained the presumptive terms and delegated to the jury the determination of aggravating factors, defendant would have been subject to the statutory maximums for second- and third-degree offenses. Defendant does not have the right to a windfall sentence under an unconstitutional scheme, but only the right to a new sentencing proceeding under a constitutional one. Under the current remedy, defendant will be entitled to a new sentencing hearing, unencumbered by the presumptive term. Defendant will not be subject to a higher sentence than the one already imposed. We are not judicially increasing the range of defendant's sentence and retroactively applying a new statutory maximum to an earlier committed crime. As such, our holding does not disadvantage defendant. We conclude that retroactive application of the remedy in this case does not run afoul of the state or federal prohibitions against *ex post facto* laws.

### B.

We recognize today's holding as a " 'new rule of law,' " compelled by *Blakely, supra,* and therefore we must determine the degree of retroactivity, if any, to be accorded to it. *State v. Knight,* 145 *N.J.* 233, 249, 678 *A.*2d 642 (1996). Our decision meets the " 'new rule' " test because it " 'breaks new ground' " and

" 'was not dictated by precedent existing at the time the defendant's conviction became final.' " *Johnson, supra,* 166 *N.J.* at 546, 766 *A.*2d 1126 (quoting *Knight, supra,* 145 *N.J.* at 250–51, 678 *A.*2d 642 (internal quotations omitted)); *see also State v. Afanador,* 151 *N.J.* 41, 58, 697 *A.*2d 529 (1997) (describing "new rule" as "a sudden and generally unanticipated repudiation of a long-standing practice" (internal quotations omitted)). We are not aware of any constitutional challenge to our system of presumptive criminal sentencing before *Blakely, supra.* Thus, our decision marks a departure from criminal sentencing jurisprudence that has been in play for a quarter century.

Having determined that our holding is a "new rule," we look to three factors in deciding the extent of its retroactive application: " '(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice.' " *Johnson, supra,* 166 *N.J.* at 546–47, 766 *A.*2d 1126 (quoting *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642 (internal quotations omitted)). In this analysis, we must be mindful "that the retroactivity determination often turns more generally on 'the court's view of what is just and consonant with public policy in the particular situation presented.' " *Afanador, supra,* 151 *N.J.* at 58, 697 *A.*2d 529 (quoting *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642).

With regard to factor number one, the purpose of the new rule is to bring our sentencing code into compliance with the dictates of the Sixth Amendment. We recognize that considerations of fairness strongly favor retroactive application if the new rule "overcome[s] an aspect of a criminal trial that substantially impairs its truth-finding function and which [raises] serious questions about the accuracy of guilty verdicts in past trials." *State v. Purnell,* 161 *N.J.* 44, 54, 735 *A.*2d 513 (1999) (internal quotations omitted). That is not a concern here. Since the inception of this State's Code of Criminal Justice, sentencing judges have made

findings of aggravating factors. Under the new rule, without regard to presumptive terms, judges will continue to do so. Therefore, we do not see how the "new rule" will affect the reliability of the factfinding process. Without a presumptive term, we realize that judges may have greater discretion to sentence within the range, but that in no way suggests that sentences will be substantially different in the future, or if they are different, that those sentences will be higher or lower.

The second prong in the retroactivity test concerns "the degree of reliance placed on the old rule by those who administered it." *Id.* at 55, 735 *A.*2d 513; *see also Knight, supra,* 145 *N.J.* at 252, 678 *A.*2d 642. In considering that factor, we "assess[ ] whether the old rule was administered in good faith reliance [on] then-prevailing constitutional norms." *Purnell, supra,* 161 *N.J.* at 55, 735 *A.*2d 513 (internal quotations omitted). As noted, the system of presumptive sentencing has been administered since 1979 without challenge until *Blakely, supra.* With no reason to doubt the viability. of our sentencing scheme, our judges have sentenced thousands of defendants. Accordingly, our courts have relied in complete good faith on the legality of pre-*Blakely* sentencing procedures.

Last, we "recognize[ ] that courts must not impose unjustified burdens on our criminal justice system." *Knight, supra,* 145 *N.J.* at 252, 678 *A.*2d 642. Full retroactivity would overwhelm our courts with resentencings and impose a devastating burden on the judiciary, and is not warranted under the circumstances.

In light of those factors, we can apply the new rule in one of three ways: (1) purely prospectively to all cases, (2) prospectively to all cases but the case in which the rule is announced, or (3) retroactively to cases in the pipeline. *Id.* at 249, 678 *A.*2d 642. "Pipeline retroactivity"—applying our holding to defendants with cases on direct appeal as of the date of this decision and to those defendants who raised *Blakely* claims at trial or on direct appeal— best balances principles of fairness and repose.

 Our decision today applies to sentences in both jury trial and guilty plea cases. Under *Blakely, supra,* a defendant's guilty plea, standing alone, does not constitute implicit consent to judicial factfinding of aggravating factors to support a sentence above the presumptive term. *See* 542 *U.S.* at ——, 124 *S.Ct.* at 2541, 159 *L.Ed.*2d 403. In a plea setting, the maximum sentence authorized for Sixth Amendment purposes depends on the defendant's admissions at his plea hearing and his prior criminal convictions, if any. *Id.* at ——, 124 *S.Ct.* at 2536, 2541, 159 *L.Ed.*2d 403. In addition,

> [w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements *so long as* the defendant either *stipulates* to the relevant facts or *consents* to judicial factfinding. If *appropriate waivers are procured,* States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.
>
> [*Id.* at ——, 124 *S.Ct.* at 2541, 159 *L.Ed.*2d 403 (emphasis added) (citations omitted).]

 Thus, neither a guilty plea nor a State's sentence recommendation opens the door to "judicial sentence enhancements." *Ibid.* Rather, only if the defendant *"stipulates* to the relevant facts or *consents* to judicial factfinding" is the sentencing court authorized to exceed the statutory maximum. *Ibid.* (emphasis added).[12]

As a result of today's decision, we will order a new sentencing hearing in each affected case based on the record at the prior sentencing. At the new hearing, the trial court must determine

---

[12] *State v. Anderson,* 374 *N.J.Super.* 419, 421, 424, 864 *A.*2d 1174 (App.Div. 2005), is an example in which a defendant implicitly agreed to judicial factfinding. In that case, the trial court indicated to the defendant the sentence that would be imposed if he pled guilty. *Id.* at 421, 864 *A.*2d 1174; *see also R.* 3:9–3(c). The proposed sentence on one charge exceeded the presumptive term. *Anderson, supra,* 374 *N.J.Super.* at 421–22, 864 *A.*2d 1174. Based on the court's representations, the defendant pled guilty. *See id.* at 421, 864 *A.*2d 1174. As promised, the court imposed a sentence exceeding the presumptive term. *Id.* at 421–22, 864 *A.*2d 1174. The Appellate Division upheld the defendant's sentence because the defendant implicitly agreed to judicial factfinding to support the sentence the court said it would impose. *Id.* at 424, 864 *A.*2d 1174. That holding is consistent with *Blakely, supra.*

whether the absence of the presumptive term in the weighing process requires the imposition of a different sentence. The court should not make new findings concerning the quantity or quality of aggravating and mitigating factors previously found. Those determinations remain untouched by this decision. Because the new hearing will be based on the original sentencing record, any defendant challenging his sentence on *Blakely* grounds will not be subject to a sentence greater than the one already imposed.

## VI.

Accordingly, we affirm the Appellate Division's holding that the Code of Criminal Justice's system of presumptive sentencing in *N.J.S.A.* 2C:44–1(f)(1) violates defendant's Sixth Amendment right to trial by jury. We reverse its holding pertaining to the remedy. Because the State elected not to pursue a NERA parole disqualifier on the initial remand from this Court, it will not be permitted to seek one at defendant's new sentencing hearing. We remand to the trial court for proceedings consistent with this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.