**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0369-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON J. HARRELL,

    Defendant-Appellant.

_____

Submitted May 22, 2018 — Decided June 22, 2018

Before Judges Yannotti and DeAlmeida.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
03-12-1552.

Joseph E. Krakora, Public Defender, attorney
for appellant (David A. Gies, Designated
Counsel, on the briefs).

Andrew C. Carey, Middlesex County Prosecutor,
attorney for respondent (Joie Piderit,
Assistant Prosecutor, of counsel and on the
brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Jason J. Harrell appeals from an order entered by the Law Division on May 12, 2016, denying his second petition for post-conviction relief (PCR). We affirm.

I.

Defendant was charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). Defendant was tried before a jury, which found him not guilty of murder, but guilty of the lesser-included offense of aggravated manslaughter, N.J.S.A. 2C:11-4(a), and the weapons charge. At sentencing, the judge merged the offenses, and sentenced defendant for the manslaughter to a thirty-year term of imprisonment, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant appealed from the judgment of conviction dated July 30, 2004. On appeal, defendant argued:

> I. THE TRIAL COURT'S FAILURE TO CHARGE SELF-DEFENSE CONSTITUTES A DENIAL OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL AND REQUIRES REVERSAL OF THE DEFENDANT'S CONVICTION. U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9 AND 10. (Partially Raised Below).
>
> II. THE DEFENDANT'S SENTENCE OF [THIRTY] YEARS FOR AGGRAVATED MANSLAUGHTER, WHICH WAS [TEN] YEARS BEYOND THE PRESUMPTIVE TERM, IS UNCONSTITUTIONAL AS IT IS IN VIOLATION OF THE DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL

RIGHTS TO TRIAL BY JURY, DUE PROCESS OF LAW
AND A FAIR TRIAL. U.S. CONST. AMENDS V, VI AND
XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9
AND 10.

III. DEFENDANT'S SENTENCE IS MANIFESTLY
EXCESSIVE, UNDULY PUNITIVE AND NOT IN
CONFORMANCE WITH THE CODE OF CRIMINAL JUSTICE.

IV. PROSECUTORIAL COMMENT SUGGESTING THAT
[DEFENDANT] TAILORED HIS TESTIMONY TO THE
STATE'S EVIDENCE VIOLATED [DEFENDANT'S]
CONSTITUTIONAL RIGHT TO BE PRESENT AT TRIAL,
TO CONFRONT WITNESSES, TO PRESENT WITNESSES
AND EVIDENCE IN HIS DEFENSE, AND TO A FAIR
TRIAL. (Not Raised Below).

We affirmed defendant's conviction, but remanded the matter to the trial court for resentencing pursuant to State v. Natale, 184 N.J. 458 (2005). State v. Harrell, No. A-1090-04 (App. Div. Nov. 2, 2006) (slip op. at 19). The Supreme Court denied defendant's petition for certification. State v. Harrell, 192 N.J. 480 (2007).

In our opinion on defendant's direct appeal, we noted that defendant's conviction arose from a confrontation between a group of Hispanic males and a group of black males during the early morning hours of August 24, 2003. Harrell, No. A-1090-04 (slip op. at 9-12). During that confrontation, defendant shot a weapon six times and killed a bystander, Juan Gomez. Id. at 3.

On remand, the trial court reconsidered defendant's sentence. The court filed an amended judgment of conviction dated February 1, 2008, stating that a different sentence was not warranted.

On November 7, 2007, defendant filed a pro se petition for post-conviction relief (PCR). Defendant claimed his trial attorney was ineffective because counsel did not challenge the prosecutor's comments in summation and seek a curative instruction. The PCR court assigned counsel for defendant, and in a supplemental brief, PCR counsel raised additional issues of trial counsel's ineffectiveness, specifically, the failure to call certain witnesses and to file a motion to exclude a knife and tie rod due to a lack of scientific evidence. The PCR court denied the application and later denied defendant's pro se motion for reconsideration.

Defendant appealed and argued PCR counsel was ineffective because counsel had not pursued claims defendant raised in his pro se petition. According to defendant, PCR counsel advanced a meritless claim and poorly articulated other claims. We affirmed the denial of PCR and the denial of defendant's motion for reconsideration. State v. Harrell, No. A-0340-08 (App. Div. Nov. 15, 2010) (slip op. at 8). The Supreme Court denied defendant's petition for certification. State v. Harrell, 205 N.J. 318 (2011).

On October 14, 2011, defendant filed a second PCR petition. He alleged trial counsel was ineffective because counsel failed to review discovery, investigate, and interview certain witnesses. He also alleged he was denied the effective assistance of PCR counsel and PCR appellate counsel. Defendant asserted, among other things, that PCR appellate counsel failed to argue on appeal defendant's claims of ineffective assistance of trial counsel.

The PCR court denied all relief. In a letter opinion dated June 8, 2012, the court found that all of defendant's claims were barred under Rule 3:22-4(b) and Rule 3:22-12(a)(2). Defendant appealed from the order denying PCR. We held defendant's claims regarding PCR appellate counsel were not procedurally barred, and we remanded for further proceedings on those claims. State v. Harrell, No. A-5933-11 (App. Div. Dec. 9, 2013) (slip op. at 10). We also directed the PCR court to reconsider defendant's request for assignment of counsel. Ibid.

On remand, the PCR court assigned counsel to represent defendant. On May 10, 2016, the court placed an oral decision on the record. The court determined that Rule 3:22-5 barred defendant's claim that trial counsel was ineffective for failing to contact and interview eyewitnesses to the incident and secure their attendance at trial. The court also determined that Rule

3:22-5 barred defendant's claims that PCR counsel and PCR appellate counsel were ineffective for failing to contact the aforementioned witnesses.

The court further determined that Rule 3:22-5 did not bar defendant's claim that he had been denied the effective assistance of PCR appellate counsel. The court found, however, that defendant did not present a prima facie case of ineffective assistance of PCR appellate counsel, and decided that an evidentiary hearing was not required. The court entered an order dated May 10, 2016, denying defendant's second petition for PCR. This appeal followed.

On appeal, defendant's PCR appellate counsel raises the following points:

> [POINT I]
> THE PCR COURT ERRED WHERE IT DID NOT CONDUCT AN EVIDENTIARY HEARING TO DETERMINE WHETHER THE DEFENDANT'S ATTORNEYS HAD A STRATEGIC REASON FOR NOT USING THE WITNESS STATEMENTS IN DEFENDING HIM.
>
> [POINT II]
> THE DEFENDANT INCORPORATES IN SUMMARY FASHION THE ARGUMENTS BELOW.

In his supplemental pro se brief, defendant raises the following arguments:

> POINT I
> THIS COURT SHOULD EXERCISE ITS ORIGINAL JURISDICTION PURSUANT TO [RULE] 2:10-5 AND REVIEW THIS MATTER DE NOVO IN AN EFFORT TO BRING IT TO A CLOSE DUE TO ITS PROTRACTED HISTORY.

6

POINT II

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL[] WHEN "APPELLATE PCR COUNSEL" FAILED TO RAISE ON APPEAL "TRIAL COUNSEL'S" INEFFECTIVENESS AND FAILED TO PROPERLY ARGUE "PCR COUNSEL'S" INEFFECTIVENESS [AND] THE PCR II COURT ERRED IN FINDING "THERE'S NO REASONABLE PROBABILITY THAT APPELLATE [PCR] COUNSEL'S MISSING ARGUMENTS WOULD HAVE INFLUENCED THE APPELLATE DIVISION'S DECISION."

POINT III

THIS COURT SHOULD EXTEND THE REQUIREMENTS OF COURT [RULE] 3:22-6(d), RUE AND WEBSTER TO APPLY TO "APPELLATE PCR COUNSEL" OR MODIFY and/or ADD LANGUAGE TO REQUIRE "APPELLATE PCR COUNSEL" TO APPROPRIATELY RAISE ALL ISSUES PRESENTED IN THE COURT BELOW FOR EXHAUSTION PURPOSES; THE PCR II COURT ERRED IN REFUSING TO EXTEND THE PRINCIPLES OF [RUE] AND [WEBSTER]; [RULE] 3:22-6(D), OR A VARIATION OF THE SAME TO APPLY TO APPELLATE PCR COUNSEL; AND ERRED IN FINDING THAT APPELLATE PCR COUNSEL CAN "WINNOW OUT WEAKER ARGUMENTS ON APPEAL["] AND FOCUS ON ONE CENTRAL ISSUE OR AT MOST A FEW KEY ISSUES.

POINT IV

PCR II COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ONLY VIABLE ISSUES TO THE PCR II COURT AND VIOLATED [RULE] 3:22-1(D). (Not Raised Below).

III.

We turn first to defendant's contention that on remand, the PCR court erred by failing to conduct an evidentiary hearing on his petition.

A defendant is entitled to an evidentiary hearing on a PCR petition if the defendant presents a prima facie case in support

7

of PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under Strickland, the defendant must first show that "counsel's performance was deficient." 466 U.S. at 687. The defendant must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

The defendant also must show that counsel's "deficient performance prejudiced the defense." Id. at 687. The defendant is required to establish that "counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." Ibid. The defendant must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A

reasonable probability is a "probability sufficient to undermine confidence in the outcome." Ibid.

Here, defendant argues that his trial attorney was ineffective because he failed to interview certain witnesses who provided statements regarding the shooting to detectives in the Middlesex County Prosecutor's Office (MCPO). Defendant contends he was denied the effective assistance of PCR appellate counsel because in the appeal from the denial of his first petition for PCR, appellate counsel did not raise and effectively argue this issue.

We note that defendant testified at trial that in the early morning hours of August 24, 2003, his friend Brian Weeks was arguing with Mario Caprio on a street in New Brunswick, and they were surrounded by a group of Hispanic males and a group of black males. Defendant pulled up to the scene in his truck and he observed the crowd surrounding Weeks. Weeks told defendant to get a gun he had previously given to Tryshon Stokes. Defendant said he retrieved the gun "to make everyone get away from the area and that was it."

Defendant returned to the scene and exited his truck. According to defendant, Weeks was surrounded by "a bunch of people." A person who "had" Weeks would not move, so defendant fired the gun downwards in front of that individual. Defendant

stated he did not try to shoot or kill anyone. He said he did not aim the gun specifically at any person, and the person whom he shot "was all the way down the street." Defendant testified that "there was no way I intended to shoot this guy."

Defendant further testified that Weeks grabbed his arm and that was what "made [him] shoot to the left." He stated he did not know if Weeks "saw the situation like [he] saw it or he wanted me to stop shooting, but when I fired the gun that's when [Weeks] grabbed my arm or tried to take the gun from me or whatever he was trying to do."

On cross-examination, defendant stated that he fired the first shot in the air and there was no reaction from the group. He fired another shot into the air and the crowd did not respond to that shot. Defendant said he then dropped his arm and fired straight ahead in the direction of the group of people who were surrounding Weeks. Defendant stated that at this point, "[e]veryone started to run around."

Defendant testified that Weeks was no longer surrounded. He admitted, however, that he fired two more shots. He stated that Weeks grabbed his arm and pulled his arm down, but he conceded that he pulled the trigger two more times. Defendant said that he did not intentionally shoot Gomez.

10

On re-direct, defendant again insisted that he accidentally shot Gomez. He stated that after Weeks grabbed his arm, two more rounds went off, but he did not know Weeks was going to grab his arm. He claimed Weeks exerted force upon his arm.

Earlier in the trial, Weeks had testified for the prosecution. Weeks stated that during the melee, he saw defendant arrive on the scene in his car, pull out a gun, and start shooting in his direction. Weeks testified that he heard "like eight shots" and ran. During cross-examination, Weeks was asked if he grabbed defendant's arm or saw anyone grabbing defendant while the gun was going off. Weeks replied, "No."

On appeal, defendant argues that his trial attorney was ineffective because he failed to interview certain witnesses who purportedly would have corroborated his statement that Weeks grabbed his arm, causing him to aim the weapon in the direction of the victim. In support of this argument, defendant submitted statements that several witnesses provided to detectives in the MCPO.[1]

In his statement, J.G. said he was a witness to the shooting. J.G. stated that "one of the guys" on the scene started shooting, and that person was shooting at Carpio. The victim was hit when

---

[1] We use initials to identify the witnesses.

he was running from the scene. J.G. said, "then . . . the guy just spinned him around where I was like his back shooting."

L.J. told the detectives that on the night of the incident, he was with Weeks and others in defendant's vehicle. Defendant parked the vehicle and they got out. They saw Weeks and others arguing. L.J. said there was "so much commotion" and then he heard shots. He saw defendant firing the gun into the crowd. He stated, "I seen the dude grab his arm." He identified the "dude" as "the Spanish kid."

J.M. stated that he was with defendant on the night of the incident. They went to several clubs, and later came upon a crowd of people on George Street. J.M. stated that he saw Weeks and the "dude that got shot." J.M., defendant and others got out of defendant's vehicle and observed a crowd. He saw defendant firing a gun. J.M. said defendant "was going wild" with the gun. He saw defendant shoot the gun, but he did not see defendant shoot the victim. After the shooting, J.M. got back into the vehicle with defendant, and they drove off.

J.S. told the detectives he saw a vehicle drive up and four persons get out. J.S. said Carpio was talking in the street with a male who could have been black or Hispanic. J.S. saw the person

shooting at a person named "Joell."[2] He was "shooting, bang, bang." J.S. recalled five shots directed "straight at Joell." The shooter told the person who was arguing with Carpio, "let's go, let's go." The shooter then got into the vehicle.

Notwithstanding defendant's arguments to the contrary, we are convinced defendant failed to show he was denied the effective assistance of counsel because his trial attorney did not interview or present any of these witnesses at trial. Defendant asserts these witnesses would have corroborated his testimony that Weeks grabbed his arm, causing him to direct a shot at the victim.

However, as we stated previously, Weeks testified at trial that he did not grab defendant's arm during the shooting. Although defendant testified to the contrary, the additional witnesses defendant has identified would not have directly corroborated defendant's testimony. As noted, J.G. stated he saw someone spin defendant around, but he did not indicate when this occurred or whether it had any effect upon the direction in which defendant was shooting. In addition, L.J. said he saw someone grab defendant's arm, but he did not state when this occurred or that it caused defendant to aim his shot at the victim.

---

[2] The record shows that a person named "Joel" was involved in the fracas; however, he was not the victim.

A-0369-16T1

Furthermore, J.G.'s and L.J.'s statements indicate that it may have been strategically disadvantageous to elicit trial testimony from them. J.G. stated that he saw defendant shooting directly at Carpio, and L.J. said he saw defendant shooting into the crowd. In addition, J.M. stated that defendant "was going wild" with the gun, and J.S. said defendant was directing his shots directly at a person named "Joell."

In any event, none of these additional witnesses would have provided significant support to the defense. Here, defendant was charged with murder under N.J.S.A. 2C:11-3(a)(1) and (2), and the trial judge also instructed the jury on aggravated manslaughter and reckless manslaughter, as lesser-included offenses. As stated, the jury found defendant guilty of aggravated manslaughter.

Criminal homicide constitutes aggravated manslaughter when the defendant "causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). On the other hand, reckless manslaughter can be found when the defendant causes the death of another person by acting "recklessly." N.J.S.A. 2C:11-4(b)(1). "The distinction between the two crimes turns on the degree of probability that death will result from the defendant's conduct." State v. Galicia, 210 N.J. 364, 378 (2012).

A person may be found guilty of aggravated manslaughter if "it is probable that death will result" from defendant's conduct. Ibid. (citing State v. Simon, 161 N.J. 416, 507 (1999)). However, homicide constitutes reckless manslaughter "when it is only possible that death will result. Ibid. (citing State v. Curtis, 195 N.J. Super. 354, 364 (App. Div. 1984)).

In this case, the PCR judge noted that defendant was the only individual who fired a gun, and he fired the gun six times into the crowd. The judge correctly observed that even if the jury believed Weeks grabbed defendant while defendant was firing the gun, thereby causing him to shoot in an unintended fashion, this did not preclude the jury from finding, based on the totality of the circumstances, that defendant acted with extreme indifference to human life.

Moreover, testimony from the additional witnesses consistent with the statements they provided to the MCPO would not have precluded the jury from finding that when defendant shot the gun six times into the crowd, the death of some person was probable rather than merely possible. Thus, even if counsel erred by failing to interview and present testimony from the additional witnesses, defendant failed to show that it was reasonably probable the jury would have found him not guilty of any offense related to Gomez's

death, or not guilty of aggravated manslaughter and guilty of reckless manslaughter.

Therefore, defendant failed to establish he was denied the effective assistance of trial counsel. For essentially these same reasons, defendant did not present a prima facie case of ineffective assistance of PCR counsel or PCR appellate counsel. The PCR court correctly determined that an evidentiary hearing was not required on defendant's second PCR petition. Porter, 216 N.J. at 354 (citing R. 3:22-10(b)).

We have considered the other arguments presented in defendant's counseled brief, and the arguments defendant has presented in his pro se supplemental brief. We are convinced all of these arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION